# Bryant's Appeal.

1. Where the fund produced by a sheriff's sale of real estate is insuf-
ficient to pay liens prior to the judgment under which the sale is made,
the plaintiff in the writ issued thereon, is entitled to receive out of the
fund the costs incurred in order to effect the sale only, and not those
incurred prior to his execution.

2. When two or more pieces of real estate are sold in parcels for dis-
tinct sums, upon a junior judgment not reached in the distribution, the
costs incurred upon the execution process alone, should be divided by
the number of separate pieces of realty sold, and the resulting amount
charged to the fund realized from each.

3. The Act of April 2d 1870, P. L. 796 (providing for the improve-
ment of Penn avenue, in the city of Pittsburgh), provides that the assess-
ments filed under it "shall not be divested by any judicial sale." In a
sheriff's sale of land, subject to such lien, the amount realized was suffi-
cient to pay the lien in full. *Held,* that the Act nevertheless applied,
and the lien was not payable out of the fund.

October 23th 1883.   Before MERCUR, C. J., GORDON, PAX-
SON, TRUNKEY and STERRETT, JJ. GREEN and CLARK, JJ.,
absent.

APPEAL from the Court of Common Pleas No. 1 of *Alle-
gheny county :* Of October Term 1883, No. 15.

This was an appeal by Sarah M. Bryant from a decree of
the court of Common Pleas No. 1 of Allegheny county con-
firming the sheriff's special return of his distribution of pro-
ceeds of sale of the real estate of Charles Stoehr, arising out of
the following facts.

Under a fi. fa. issued on a judgment in favor of one Trauer-
man against Charles Stoehr, the sheriff levied on and sold June
5th 1882 certain real estate of the defendant in the fourteenth
ward of the city of Pittsburgh, viz. a certain lot fronting on
Forbes street which was sold for $700 ; and two lots situate in
the twenty-third ward of said city, which were sold together
for $40.   The Forbes street lot was subject to a city claim filed
October 12th 1877 for the improvement of said street, under
the provisions of the Act of April 2d 1870 (P. L. 796), entitled
" An Act to provide for the improvement of Penn avenue and

other avenues and streets in the city of Pittsburgh" which provides as follows:

"Section 19. Said assessments, with the interest accruing thereon, shall be a lien upon the property abutting upon said avenue from the commencement of the work, and shall remain a lien until fully paid; they shall have precedence to all other liens, *and shall not be divested by any judicial sale:* provided that said lien shall be limited to the lots bounding or abutting on said avenue, and for not exceeding in depth from said avenue one hundred and twenty feet."

The same lot was also subject to certain tax liens and to a mortgage of $600, dated April 16th 1881, and duly recorded same day, held by Sarah M. Bryant, the appellant; which at the time of sale was prior to all other liens except the assessment and taxes aforesaid.

The sheriff made a special return to the writ under the Act of April 10th 1862, P. L. 364, "relative to the distribution of the proceeds of sheriff's sales of real estate in the county of Allegheny," reporting that he had appropriated the $40, derived from the sale of the twenty-third ward lots to certain tax liens with the costs thereon. From the $700 realized from the sale of the Forbes street lot, he paid the entire costs on the writ which, including $6.75 of costs accrued before execution, amounted to $59.95. He also awarded the sum of $191.54 in full of the city claim under the Act of April 2d 1870 aforesaid, and after deducting taxes, awarded the balance of $259.77 to Mrs. Bryant, on account of her mortgage.

To this return Sarah M. Bryant filed exceptions as follows: 1. Because the sheriff appropriated to costs on the writ the sum of $59.95 including therein $6.75 of costs on the judgment on which it was issued. 2. Because the sheriff appropriated the $40 for which the twenty-third ward lots were sold, to the payment of taxes and costs thereon, instead of first deducting one half the costs on the writ remaining after deducting $6.75, the costs on the judgment aforesaid and $12, the amount of the sheriff's poundage. 3. Because the sheriff appropriated $191.54 to the payment of the assessment on the Forbes street lot which under the Act of April 2d 1870 was not divested by the sale.

The court below dismissed the exceptions and confirmed the sheriff's return, in the following per curiam opinion:—

"The main exception is in regard to the appropriation of the money made by the sale to the payment of the municipal lien for the grading and paving of Forbes street. It is dismissed. I think the proper interpretation of the Act, wherein it provides that the lien shall have precedence of all other liens, and shall not be divested by any judicial sale, is that, so

far as money is made by a sale of the property, properly applicable otherwise to the lien, it must be appropriated to its payment, but the property still remains bound by the residue in the hands of the purchaser. See Pittsburgh's Appeal, 70 Pa. St. 142. The other exceptions are also overruled."

Whereupon Sarah M. Bryant took this appeal, assigning for error the decree of the court, dismissing her exceptions filed to the sheriff's return as above.

*John D. Shafer* and *George Shiras, Jr.* (with them *C. C. Dickey*), for the appellant.—The costs accrued before execution issued are not payable out of the proceeds of sale as against prior lien creditors : Fry's Appeal, 26 P. F. S. 82. There being two funds for distribution, a part of the costs of sale should be charged to each of them. From the costs on the writ, $59.95, there should be deducted the costs accrued before execution $6.75 and the sheriff's poundage of 2 % on $700 for which the Forbes street lot was sold and the balance $39.20 should be equally divided between the two funds. In interpreting the Act of April 2d 1870, the intention of the legislature is not to be presumed, but collected from the words used which are clear and unambiguous : Rex *v.* Ramsgate, 6 B. & C. 712 ; Rex *v.* Inhabitants, 10 B. &. C. 52 ; Green *v.* Wood, 7 Q. B. 178 ; Sedgwick on Construction of Statutes, 205, 220 ; Bradbury *v.* Wagenhorst, 4 P. F. Smith 180 ; Howard Association's Appeal, 20 P. F. Smith 344; Rex *v.* Skone, 6 East 518 ; Haworth *v.* Ormerod, 6 Q. B. 307. If the legislature had intended that *when enough is realized* to pay the lien, it is divested and paid out of the fund, they would have clearly expressed that intention as they have done in similar Acts. Thus in the Act of March 26th 1867, § 12, P. L. 555, it is provided " that the liens shall not be divested by any judicial sale, *except so much as the proceeds of such sale shall satisfy and pay*." So also the Act of May 1st 1861, § 24, P. L. 450 ; Act of January 6th 1864, § 19, P. L. 1131 ; Act of March 22d 1877, § 11, P. L. 18. Pittsburgh's Appeal, 20 P. F. Smith 142 arose under the Act of January 6th 1864, and does not apply to this case. The reason for this provision in the Act is that under it thousands of liens were to be filed, payable in instalments extending for ten years, and the city attorney would be obliged to watch every sheriff's sale during that time, lest the lien be divested without money realized to to pay it, or if realized to see to its appropriation.

*Josiah Cohen*, for appellee.—There were not two funds for distribution ; there was but one, arising on a sale of two pieces of property under the same writ. If "one half of the costs

[Bryant's Appeal.]

should be charged to the proceeds of each of the two pieces of property sold," it would follow that if either did not realize that amount, that the costs could not be paid from the proceeds of the other, which is against the law and the practice. The Act of April 2d 1870 in § 19 provides that the assessments "shall remain a lien until fully paid." In connection with this the subsequent provision that the lien "shall not be divested by any judicial sale," evidently applies only where the fund realized is insufficient to pay the lien in full. If the strict language of the latter clause is insisted on the absurd result would be that the lien would not be divested by a sale upon a levari facias issued upon it. The Act of January 6th 1864, P. L. 1131, § 19, under which Pittsburgh's Appeal, 20 P. F. Smith 142 was decided, favors this construction. Both Acts are for the same purpose, viz : the protection of the lien of the city. Nothing further than that is intended by the Act of April 2d 1870, and that end is reached when the fund realized is sufficient to pay the assessment.

The opinion of the court was delivered November 5th 1883 by Mr. Justice STERRETT.

The fund for distribution represents two separate pieces of real estate sold by the sheriff on a writ of fieri facias against Christian Stoehr. The lot fronting on Forbes street, 14th ward, Pittsburgh, was sold for $700, and the two 23rd ward lots were sold together for $40. The Forbes street lot was subject to a municipal lien, filed October 12th 1877, in favor of the city, for paving, etc., under the Penn Avenue Act, which provides, inter alia, that the cost of grading, curbing and paving streets shall be assessed against the property fronting thereon, and shall be paid in ten equal annual instalments, with interest, etc. It was also subject to liens for unpaid taxes, and a mortgage of $600, in favor of appellant, dated and recorded April 16th 1881 ; which mortgage was prior to all other liens except the paving and tax liens above mentioned. The 23rd ward lots were subject to tax liens for the years 1881 and 1882, aggregating $27.81 and costs thereon, which together amount to a sum sufficient to absorb the entire proceeds of those lots. In his special return, the sheriff appropriated the $40, proceeds of the 23rd ward lots, to the tax liens and costs thereon, and thus, in effect, took all the costs, as taxed on the writ, out of the proceeds of the Forbes street lot. These costs amount to $59.95, including $6.75, costs accrued on the judgment prior to issuance of the execution. He also appropriated out of the same fund $191.54 to the paving lien, in full, and the residue, $259.77, to appellant's mortgage. Exceptions to the special

return were overruled by the court, and the fund distributed as above stated.

The subjects of complaint in the several specifications of error, are, 1st. That no part of the fund should have been appropriated to the $6.75 costs on the judgment upon which the execution was issued; 2d. That the $40 realized from the 23rd ward property was not appropriated, as it should have been, first to half of the costs incurred in effecting the sale, to wit: $20.60, which consists of one-half of the costs taxed on the writ, less the costs of the judgment, and $12 sheriff's poundage; and, 3d. That the sum of $191.54 was not appropriated to appellant's mortgage instead of the Forbes street paving lien.·

As to the first and second subjects of complaint, there is manifest error in the appropriation. When two or more pieces of real estate are sold on a junior judgment which is clearly not entitled to participate in the fund realized from the sale, the costs of effecting the sale, that is, the costs incurred on the execution process alone, including advertising and excluding costs of the judgment proper, should be divided into as many equal parts as there are separate pieces of property sold, and one portion thereof charged to the fund realized from each. In this case one half of the execution costs should have been charged to the proceeds of the 23rd ward lots, and the other to the fund realized from the Forbes street lot. In no other way can the rights of respective lien creditors, on different·pieces of property, be preserved. In Lahr's Appeal, 9 Norris 507, it is said, the plaintiff in a judgment not reached in distribution of the proceeds of real estate, is not entitled to any costs, except such as are actually necessary to effect the sale. The costs incurred upon prior fruitless efforts to bring about a sale cannot be allowed to affect ·prior lien creditors. This is merely a re-affirmance of a principle settled by prior adjudications, among which are Malone's Appeal, 29 P. F. Smith 481, and Fry's Appeal, 26 P. F. Smith 82. In the latter case, the present chief justice said : " In the distribution of money raised by sheriff's sale of real estate, the costs of sale should first be paid, and the residue of the fund applied to the liens divested by the sale according to their priority. The costs thus preferred do not include those made in obtaining the judgment, but commence with the issuing of the execution necessary to effect the sale." The amount of costs involved in this contention is small, but the principle is nevertheless important and should not be disregarded.

. The remaining contention involves a new and important question arising under the Act of April 2d 1870, P. L. 796, entitled " An Act to provide for the improvement of Penn

[Bryant's Appeal.]

avenue and other avenues and streets in the city of Pittsburgh," commonly known as the Penn Avenue Act. By that Act a system of street improvement, on the credit of the property fronting thereon, was inaugurated and extensively practiced. It provides that the funds necessary to make the improvement, on each particular street, shall be raised by sale of bonds issued by the city; that the cost of the improvement when completed shall be assessed, per foot front, on the property bounding on the street or avenue, and the amount thus assessed shall be paid to the city in ten equal annual instalments, with interest at the rate of seven per cent. The nineteenth section of the Act declares that "said assessments, with the interest accruing thereon, shall be a lien upon the property abutting on said avenue, from the commencement of the work, and shall remain a lien until fully paid. They shall have precedence over all other liens, and shall not be divested by any judicial sale; provided that the lien shall be limited to the lots bounding or abutting on said avenue, and for not exceeding in depth from said avenue one hundred and twenty feet." The Forbes street paving lien was filed pursuant to the provisions of that Act, and the question presented by the record is whether the lien is entitled to any part of the proceeds of the lot encumbered thereby. It is very clear that it is not entitled to participate in the distribution unless the lien was wholly or partially divested by the sale, because it is only by reason of its divestiture that any lien is transferred to and follows the fund arising from the property upon which it rested. The Penn Avenue Act in express terms declares that the assessment shall be a lien from the commencement of the work, and shall remain a lien until fully paid; that it shall have precedence over other liens, and "shall not be divested by any judicial sale." The language employed is perfectly clear and unambiguous, and too plainly expressive of the legislative intent to admit of any doubt whatever. The distinctive properties of the lien are, continuance until fully paid, precedence over all other liens, and non-divestiture by any judicial sale; and these are defined with such precision as to exclude the idea of divestiture in any other way than by voluntary payment, or payment by virtue of execution process on the lien itself. If the non divestable quality had not been so distinctly impressed upon Penn avenue liens there would be some reason for holding, as has been done in the case of other municipal charges, that the lien in question is entitled to payment out of the fund for distribution. The learned judge of the Common Pleas appears to have thought that the true spirit and meaning of the Act required him to hold that inasmuch as a sum sufficient to pay the lien was realized, it was divested and therefore entitled to payment out of the fund; but, it will be

found, on examination of other Acts creating municipal liens, that whenever such divestiture was intended by the legislature they have used apt words for that purpose. In the Act of March 26th 1867, P. L. 555, relating to the Allegheny City Park, it is provided that " the liens shall not be divested, except so much as the proceeds of such sale shall satisfy and pay." So also, in the Act of January 6th 1864, P. L. 1131, which was considered in Pittsburgh's Appeal, 20 P. F. Smith 142, it is provided that " if on any sheriff's sale or other judicial sale enough be not realized to pay off the lien, it shall continue to be a lien until the whole amount with costs be paid in full." Other Acts creating liens contain similar provisions indicative of legislative intention to divest the liens by judicial sale to the extent of the net proceeds of sale. There is a wide distinction between those Acts and the Penn Avenue Act. Instead of recognizing and providing for divestiture of the lien, the latter Act, as we have seen, expressly prohibits it. The language of the Act is substantially the same as the mortgage lien Act of March 23d 1867, Purd. 479, which provides, " when the lien of a mortgage upon real estate is or shall be prior to all other liens on the same property, . . . . the lien of such mortgage shall not be destroyed or in any way affected by any judicial or other sale whatever." Hence, it follows that a sale made on a subsequent judgment will not divest a first mortgage lien, and of course no part of the proceeds is applicable thereto. The substantial identity of the language used in the two Acts clearly indicates that the Penn Avenue Act was intended to give the city a fixed and permanent lien as security for the assessments. And there are good reasons why it should be so. Liens under that Act are payable in ten annual instalments, and if they were liable to divestiture by judicial sales, not based on the lien itself, property owners would be deprived of the extended credit intended by the Act, and the law officer of the city would be obliged to watch every sheriff's sale, for the purpose of protecting the interests of the city in the very numerous liens created by the Act. It is enough, however to rest on the words of the Act itself which declares in terms too plain to be misunderstood, that the lien shall not be divested by any judicial sale.

We are clearly of opinion that the Forbes street lien was not divested by the sheriff's sale on the junior judgment, and therefore not entitled to participate in the distribution.

> Decree reversed, at the costs of the appellees, and record remitted to the court below with instructions to distribute the fund in accordance with this opinion.