ASSOCIATED REALTY CORPORATION, a corporation of the State of Delaware, *v.* EDWARD CALDWELL and CYNTHIA CALDWELL.

(*July* 25, 1933.)

PENNEWILL, C. J., HARRINGTON and RICHARDS, J. J., sitting.

*Thomas C. Frame* for petitioner.

*Howard E. Lynch* for respondent.

Superior Court for Kent County, No. 71, February Term, 1932.

---

PENNEWILL, C. J., delivering the opinion of the court: The question raised is whether the entire proceeds of the sale must be applied to the Heather execution, the first lien on the property sold, or only so much as remains after the payment of the costs of the subsequent judgment and execution upon which that property was sold, including the costs of sale.

The sheriff being in doubt as to the proper and legal application of the fund in his hands derived from the sale, was permitted to pay the same into court, where it now remains.

It is not certain that the practice in applying the proceeds of sale in similar cases has been uniform in the three counties, or in the same county. It is certain, however, that there is no statute in this state governing the application of such a fund.

In most of the states there is a controlling statute. There are a number of early Pennsylvania cases which hold that the costs of the writ of *fieri facias* and the writ of *venditioni exponas* issued by the junior creditor on which the money was raised, but not the costs of obtaining the judgment, should be paid out of the proceeds derived from the sale, even though such proceeds are insufficient to pay in full the first lien on the property sold. *Kunsman v.*

*Kunsman,* 2 *Lanc. Law Rev.* (*Pa.*) 291; *Appeal of Fry,* 76 *Pa.* 82; *Lahr's Appeal,* 90 *Pa.* 507; *Grayson v. Hangstorfer* (*Pa.*), 9 *Weekly Notes Cas.* 333; *Appeal of Bryant,* 104 *Pa.* 372; *Drake v. Hayes,* 2 *Lack. Jur.* (*Pa.*) 297.

To the same effect is *Buena Vista Loan & Savings Bank v. Grier,* 114 *Ga.* 398, 40 *S. E.* 284.

Woolley on Delaware Practice seems to agree with the Pennsylvania decisions. This writer speaks of the rule that obtains in the sale of real estate, but we can see no difference between real estate and personal property in respect to the application of the proceeds of sale made under execution process.

In 2 *Woolley,* § 1135, it is said:

"Distribution, whether the sale is held under execution on the first, second, third or other lien, is made first to costs, second to taxes, and to other liens in the order of their entry and priority."

And at *Section* 1069 the same writer says:

"The fund, or so much thereof as is necessary, is first applied to the costs of the judgment and execution under which the sale was held, and the balance, after the payment of taxes, is distributed to and among the execution creditors according to the priority of their several executions and levies, and over-plus is returned to the defendant."

In 23 *C. J.* 696, the rule is stated as follows:

"Unless there is a statutory provision to the contrary, where liens upon the property, having priority to the judgment and execution under which the land was sold, exhaust the fund realized by the sale, the costs of the execution and sale thereunder should be deducted before distribution of the fund to prior lienors, but not including costs incurred prior to the issuance of the execution."

This rule, so stated, we think has the sanction of reason as well as authority. Upon it text-writers generally agree, as well as the few cases that have dealt with the subject.

The only objection that can be made to the rule is, that its application impairs or diminishes the security of the first lienor to the extent of the costs incurred in the

sale of the property upon which he had a first lien. The answer to this objection is, if the first lienor chooses not to sell because he thinks his claim is safe, or for some other reason, that consideration should not unduly delay a sale by a junior execution creditor for the collection of his claim. And the rule cannot, in most cases, be held to be inequitable, because the costs paid from the proceeds of sale would be no more than the first lienor would eventually have to pay if he prosecuted the sale.

Recognizing and approving the rule above stated, and applying it to the case in hand, the court holds, that out of the proceeds of the sale the sheriff should pay the costs of the execution, and of the sale made thereon, but no costs incurred before the execution was issued; and the residue of the proceeds he should pay to the person who had the first lien on the property sold.

It is conceivable that there may be cases where the application of this rule would prove inequitable, and work a hardship upon the first lien creditor, and it should not, therefore, be regarded as a hard and fast rule applicable to every case. Something must be left to the discretion of the court and the equities of the particular case.[1] But, generally speaking, we think the rule stated should be followed.

---

[1] See *Central Trust & Savings Co. v. Chester County Electric Co.,* 9 *Del. Ch.* 247, 80 *A.* 801.