MARYLAND NATIONAL BANK, a corporation of the United States of America, Petitioner Below Appellant,

v.

PORTER–WAY HARVESTER MANUFACTURING COMPANY, a corporation, Plaintiff Below Appellee,

Warren Callaway, Defendant Below Appellee.

Supreme Court of Delaware.

Nov. 24, 1972.

John E. Messick, of Tunnell & Raysor, Georgetown, for appellant.

Roy S. Shiels, of Brown, Shiels & Barros, Dover, for appellee.

CAREY, and HERRMANN, JJ., and BIFFERATO, J., sitting.

BIFFERATO, Judge:

This is an appeal from denial by the Superior Court of the petition of Maryland National Bank (Bank) to set aside an execution sale of certain farm equipment sold by Porter-Way Harvester Manufacturing Company (Porter-Way) to Warren Callaway.

The issues raised in this appeal concern the Superior Court's interpretation of Article 9, Secured Transactions, Uniform Commercial Code. The specific issues are: (1) Does the financing statement filed by the Bank meet the requirements of 5A Del.C. § 9–402(1); and (2) Is a prior creditor's security interest affected by an execution sale?

In 1971, Callaway purchased from Porter-Way cultivators, mobile viners, motor vehicles, and other farm equipment. As a condition of the contract of sale, Callaway arranged financing through the Bank. The Bank thereafter perfected a purchase money security interest by complying with the Delaware recording statutes. 21 Del.C. § 2335; 5A Del.C. § 9–402. The financing statements included the following phrase as the description of the types (*or* items) of property that were to be considered collateral:

"Equipment of all kinds, including equipment now owned by Debtor and equipment hereafter acquired by Debtor."

Subsequently, Porter-Way perfected a security interest on the same equipment covered under the Maryland National Bank's recorded lien.

On February 24, 1970, after obtaining a judgment against Callaway, Porter-Way caused the farm equipment secured by its lien to be sold by the Sheriff at execution sale. On March 4, 1970, the Bank petitioned the Superior Court to set aside the sale, contending that the attachment of the perfected security interest which they held continued in the goods, notwithstanding the disposition thereof by the sheriff's sale. Porter-Way denied this and claimed that the Bank was not a senior lien holder because the description of the goods in the recorded financing statement was too general.

The Superior Court held that the financing statement was adequate and that its description of the goods therein met the requisites of 5A Del.C. § 9–402(1). The Court also found that the involuntary sale of Callaway's collateral resulted in the extinguishment of the previously perfected liens, leaving the Bank as senior lien holder, however, with the recourse of first priority in the distribution of the proceeds. Both parties have appealed.

I

5A Del.C. § 9–402(1) provides that:

"A financing statement is sufficient if it is signed by the debtor and the secured

party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral."

Porter-Way points out that in some jurisdictions it has been held that the words "consumer goods" and "all farm equipment" in financing statements are deemed so vague as not to be in substantial compliance with § 9–402(1). In Re Lehner, 303 F.Supp. 317 (D.Ct.Colo.1969) affirmed; Household Finance Corp. v. Kopel, 427 F. 2d 357 (C.A.10, 1970); Mammoth Cave Production Credit Assn. v. T. S. York, 429 S.W.2d 26 (Ky.Ct.App.1968). On this basis, it is asserted by Porter-Way that the description, "equipment of all kinds", as contained in the Bank financing statement, is not in accord with the prevailing rule and is consequently ineffective under § 9–402.

We think Porter-Way's position is not the proper interpretation of 5A Del.C. § 9–402. This, in our opinion, is a "notice" type statute rather than the "document" type statute exemplified by our former Chattel Mortgage Act, (25 Del.C. Ch. 23) and the Uniform Conditional Sales Act (6 Del.C. Ch. 9). The Delaware Uniform Commercial Code's financing statement is designed to give public notice of the existence of a security agreement and to give enough information as to permit interested persons to make inquiries to the parties of the secured transaction to ascertain details regarding the debtor's encumbered assets. 5A Del.C. § 9–402. The necessary description of collateral in such a financial statement is discussed in the Delaware Study Comment upon 5A Del.C. § 9–402 as follows:

"Any description of personal property or real estate in a financing statement or security agreement is sufficient, irrespective of whether or not it is specific, if it is reasonably identified or described."

The provisions of § 9–110 also shed light upon an adequate description under Article 9. That Section provides that for the purposes of Article 9, "any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described."

The financing statement filed by the Bank describes the collateral as "equipment of all kinds. . . ." In Article 9, there are four recognized classifications of goods. The word "equipment" is one such classification if it is "used or bought for use primarily in business" including farming. See 5A Del.C. § 9–109. Since the financing statement here set forth a lien on "equipment" and because Callaway bought the equipment for the business of farming, the description of the collateral in the financing statement was sufficiently informative as to constitute notice as required by 5A Del.C. § 9–402(1). Then, too, in the Delaware Study Comment upon 5A Del.C. § 9–109, "equipment" is defined as one of the "basic types of collateral".

Thus, the descriptions set out in the financing statement of this case meet the requirements of 5A Del.C. § 9–402 in that they indicate the "types" of collateral by which the security agreement is secured. The financing statement is not incomplete or inadequate merely because it does not follow the alternate, offered by 5A Del.C. § 9–402, of describing the "item".

Porter-Way infers that a description of goods in a financing statement must be less ambiguous than that given here by the Bank, otherwise there is no means available to ascertain the identification of the collateral described notwithstanding the burdensome task of investigating the character of undescribed goods. A specific procedure does exist under the Code wherein a prospective lender may request a debtor to forward a document to the secured party who in turn must return such

listing the secured collateral. 54A Del.C. § 9–208. If such had been requested by Porter-Way, the collateral covered by the Bank's lien could have been ascertained.

Furthermore, in the present case, Porter-Way, the junior lienholder, knew or had reason to know that Callaway was in the farming business and therefore the notice of "equipment of all kinds . . ." should have alerted him to ascertain the nature of this term through implementation of 5A Del.C. § 9–208.

■ Taking into consideration the broad purposes of the Uniform Commercial Code, a restrictive construction should not be given to this section setting forth the requisites of a sufficient financing statement. See National Cash Register Co. v. Firestone & Co., Inc., 1962, 346 Mass. 255, 191 N.E.2d 471. American National Bank & Trust Co. of Sapulpa v. National Cash Register Co., Okl.1970, 473 P.2d 234.

## II

■ The second issue raised on this appeal is whether a prior creditor's security interest remains in effect after an execution sale?

The alienability of the debtor's rights is dealt with in Section 5A Del.C. § 9–311 which provides:

"The debtor's rights in collateral may be voluntarily or involuntarily transferred (by way of sale, creation of a security interest, attachment, levy, garnishment or other judicial process) notwithstanding a provision in the security agreement prohibiting any transfer or making the transfer constitute a default."

It is the position of the Bank that only the debtor's rights may be alienated in an involuntary disposition of goods; and that the security interest of a lienholder continues in the property even after a sheriff's sale. The Bank relies upon Altec Lansing v. Friedman Sound, Inc., 204 So.2d 740 (Dist.Ct.App.Fla.1967); First National

Bank of Glendale v. Sheriff of Milwaukee County, 34 Wis.2d 535, 149 N.W.2d 548 (1967).

We find unpersuasive the contention that an execution sale does not extinguish a previous security interest in collateral.

The official Uniform Commercial Comment upon § 9–311 [Comment 2 to § 9–311, A.L.I.], which deals with alienability of debtor's rights explains that:

"in all security interests the debtor's interest in the collateral remains subject to claims of creditors who take appropriate action. *It is left to the law of each state to determine the form of 'appropriate process'.*" (Emphasis added)

There is no statutory provision in Delaware for the "appropriate process" to be followed by a creditor intending to limit the interest in secured property acquired by a purchaser at a sale.

■■ It has long been settled by case law in this State that a creditor may levy against a secured property in the hands of a debtor with the resultant proceeds being distributed on the basis of priority of liens. In turn, under the established case law of this State, the title acquired by the purchaser at the sale is free and clear of all liens theretofore existing. In 2 Woolley on Delaware Practice § 1072(d), p. 736, the author states:

"When goods and chattels levied upon and sold under either fi fa or vend. exp. are covered by a chattel mortgage placed upon them either before or after levy, they are sold free and discharged from the lien of the mortgage, and the proceeds are applied first, to the costs of the sale, and the balance distributed according to the priority of the respective liens."

See Isaacs v. Messick, 1 Marv. 259, 40 A. 1109 (1894); Associated Realty Corporation v. Caldwell, 6 W.W.Harr. 196, 172 A. 842 (1934).

■ It appears, therefore, that it was the intent of the Legislature to forbear concerning the enactment of any statutory provision for the "appropriate process" contemplated by § 9–311, in order that our case law remain determinative of the issue of alienability of debtor's rights. The silence of the commentators as to any change made by § 9–311 to existing Delaware law contributes to the conclusion that § 9–311 made no change in Delaware's long-standing policy in the matter. Certainly, if a reversal of law was sought the Act itself or the commentators would have made mention of such an important change.

We agree with the policy of the law thus established. Chattels sold at an execution sale should be sold free and clear of all encumbrances in order to ensure the highest price and to stimulate bidding. The creditor with the highest priority is not prejudiced in his reliance on the value of the chattel to secure the debt since he is satisfied first from the proceeds.

We find that Altec Lansing v. Friedman Sound, Inc., *supra*, and First National Bank of Glendale v. Sheriff of Milwaukee County, *supra*, are clearly distinguishable. In Florida and Wisconsin, at the time these cases were decided, the legislatures of both states had enacted statutes to supplement § 9–311 of the Uniform Commercial Code. Their legislatures sanctioned the continuance of the security interest for the lienholder in collateral purchased at an execution sale. As we have seen, such legislation has not been enacted in Delaware.

Moreover, the Florida and Wisconsin rules interfere with the general policy of the Code to eliminate stumbling blocks in commercial transactions. Certainly, prospective bidders at a sheriff sale would be discouraged from bidding on property with an encumbered title.

We conclude, therefore, that the Superior Court correctly held that the sale extinguished the Bank's lien under § 9–311, ac-cording it, however, a priority position as to the proceeds. The contrary rule would discourage prospective bidders by requiring them, in effect, to make lien searches before bidding.

For the forgoing reasons, the judgment below is affirmed.