360 So.2d 791 (1978)
FIRST NATIONAL COMMERCE AND FINANCE COMPANY, Appellant,
v.
The INDIANA NATIONAL BANK, Appellee.
No. 77-1101.
District Court of Appeal of Florida, Third District.
July 5, 1978.
*792 Alfred Gustinger, Jr., Miami, for appellant.
Paul, Landy, Beiley & Yacos and Jeffrey S. Tanen, Miami, for appellee.
Before HAVERFIELD, C.J., and PEARSON, J., and CHARLES CARROLL (Ret.), Associate Judge.
PEARSON, Judge.
The defendant, First National Commerce and Finance Company, appeals a summary final judgment for plaintiff, The Indiana National Bank. The appellee, The Indiana National Bank, brought suit to foreclose its recorded security interest in an aircraft. One of the defendants named was First National Commerce and Finance Company, who had purchased the aircraft at a mechanic's lien sale pursuant to Section 85.031(2), Florida Statutes (1975). The order appealed recites the following stipulated facts which have not been controverted on this appeal:
"The above-styled action came on for hearing before the Court on April 14, 1977 upon the Motion of Plaintiff-Counter-Defendant, THE INDIANA NATIONAL BANK, hereinafter called (`INDIANA') for Summary Judgment on Counts I and II of its Complaint and on the Counterclaim asserted by Defendant-Counter-Plaintiff, FIRST NATIONAL COMMERCE AND FINANCE COMPANY, hereinafter called (`FNC'). The Court has reviewed the file, has read the memorandum of law submitted by counsel for the respective parties and has entertained the arguments advanced by counsel for the respective parties.
"Therefore, upon consideration, it is:
"FOUND AND DETERMINED that the following facts have been either stipulated and agreed to by the parties in respect of the subject Motion for Summary Judgment by virtue of their respective memoranda of law or are without contradiction, gathered from the affidavits, depositions and pleadings, to wit:
"On October 19, 1974, INDIANA financed the purchase of a Cessna 401, Serial Number 401-0056, F.A.A. Registry Number N-8007-M, hereinafter called *793 (`SUBJECT AIRCRAFT') by CABAIR, INC. for payments aggregating $123,137.50. The Installment Sales Contract was duly recorded with the Federal Aviation Administration (hereinafter called `F.A.A.') Registry, pursuant to 49 U.S.C. § 1403 on November 25, 1974, as acknowledged by the F.A.A.
"On April 7, 1975, SUN COUNTRY AIRLINES, INC., assumed the obligation of CABAIR, INC. on the Installment Sales Contract. This Assumption Agreement was duly recorded with the F.A.A., pursuant to 49 U.S.C. § 1403 on May 13, 1975.
"SUN COUNTRY AIRLINES, INC. and CABAIR, INC. have made no monthly payments since approximately June of 1976 and, therefore, are in default. As of January 19, 1977, the balance owed INDIANA was $76,279.96.
"The last payment was received on June 8, 1976 and applied to the due and outstanding April 1, 1976 payment. Prior to July 13, 1976, INDIANA received a telephone call from SUN COUNTRY AIRLINES, hereinafter called (`SUN COUNTRY'), in which call SUN COUNTRY advised that it could not meet the payment schedule on its obligation and requested INDIANA pick up the subject aircraft at the North Perry Airport located in Broward County, Florida. SUN COUNTRY did not advise INDIANA that the subject aircraft was being held for a lien or that it was chained to the ground.
"On July 13, 1976, INDIANA advised one Jack L. Rhodes, President of Jack L. Rhodes Aircraft Sales, Inc. that SUN COUNTRY had been in contact with INDIANA and had requested that INDIANA pick up the subject aircraft, that the subject aircraft was located at the North Perry Airport and that one engine was not operational and indicated low cylinder pressure. On a week day following July 30, 1976, Rhodes unsuccessfully went to the North Perry Airport to pick up the subject aircraft.
"Some time after February 1, 1976, CORT AVIATION, INC., a Florida corporation engaged in providing mechanical services and storage space to aircraft owners, hereinafter called (`CORT'), undertook repairs on the subject aircraft. This work resulted in $900.00 of mechanic's charges for labor and parts. The $900.00 was not paid by SUN COUNTRY AIRLINES, INC. No Mechanic's Lien was ever recorded by CORT AVIATION, INC. with the F.A.A.
"On July 30, 1976, to satisfy the Mechanic's Lien, CORT sold the subject aircraft, pursuant to Florida Statutes § 85.031(2) to FNC. No actual notice of the sale was every given to INDIANA."
The court entered its opinion on the question of law presented.
"The issue before the Court is whether the sale of an aircraft conducted pursuant to Florida Statutes § 85.031(2) by a mechanic in possession can extinguish and divest the interest of the holder and owner of a lien validly perfected with the F.A.A. without notice to such secured party. This Court holds that such a sale cannot lawfully extinguish such a prior recorded lien; for holding to the contrary would be itself contrary to Florida law, inequitable in the extreme and unconstitutional in that the holder and owner of the lien would be divested of an interest in property without due process of law.
"The purpose of Florida Statute § 85.031(2) is to allow a mechanic who or which has put labor and materials into a chattel to receive payment for that labor and for those materials. The statute does not expressly or implicitly provide that, by a statutory sale, a prior existing lien on that chattel would be extinguished. It is a rule of statutory construction that a statute enumerating things upon which it is to operate must be construed as excluding from its operation all things not expressly mentioned therein. See, e.g., Ideal Farms Drainage Dist. v. Certain Lands, 19 So.2d 234 (Fla. 1944); Dobbs v. Sea Isle Hotel, 56 So.2d 341 (Fla. 1952). Therefore the concept of extinguishment is excluded. The Court has been presented with no legal authority *794 whatsoever to the effect that the legislature of this State intended to provide that a statutory sale by a mechanic would divest all other parties of record of their respective interests in that property and, thereby, extinguish their respective lien rights.
"FNC has argued to this Court that CORT, a mechanic lienor, had priority over the secured lien of INDIANA, that the operation of the statutory sale extinguished the secured lien of INDIANA, and that, therefore, FNC, as purchaser, took the aircraft free and clear of INDIANA's lien. To the extent that FNC took the position of CORT, and only to that extent, it has a first lien, i.e., to the extent of $900.00. As to extinguishing the $76,279.96 interest of INDIANA, the sale did not, because it lawfully could not, effect the result.
"If Florida Statute § 85.031(2) allowed a mechanic in possession to extinguish by sale prior liens, without notice to secured parties, then that statute would be unconstitutional in that a taking of an interest in property would be authorized under color of state law but without due process of law. Florida law requires, for example, that a holder of a mortgage lien cannot be deprived of that lien without due process of law. See, Seaboard All Florida Railway v. Labiet, 141 So. 886 (Fla. 1932). Further, it is presumed that the legislature of this state intended to enact constitutional laws and laws which do not conflict with the guarantee of due process. See, Smetal Corp. v. West Lake Inv. Co., 172 So. 58 (Fla. 1937); Bussey v. Legislative Auditing Committee, 298 So.2d 219 (Fla. 1st DCA 1974). In order to construe the statute as constitutional, this Court must find that INDIANA's security interest and lien have not been extinguished.
"At the outset of the hearing, this Court in the interest of justice allowed FNC to include as an additional defense that of estoppel. FNC has merely argued that INDIANA's loan was somehow in default from February, 1976, and that, therefore, INDIANA is estopped. An estoppel essentially and generally consists of three elements: (1) words and admissions or conduct, acts, and acquiescence or all combined, causing another person to believe in the existence of a certain state of things (and 2) in which the person so speaking admitting, acting and acquiesing, did so wilfully, culpably, or negligently (and 3) by which such person is or may be induced to act so as to change his own previous position injuriously. Mere silence or acquiescence is not enough. There must be special circumstances requiring the one sought to be estopped to speak.
`It is essential that the one claimed to be estopped should have had knowledge of the facts, and that the adverse party should have been ignorant of the truth, and have been misled into doing that which he would not have done but for such silence. Silence will not support an estoppel unless the person claiming an estoppel justifiably relied on the silence to its prejudice, and such conduct and reliance must be intended or reasonably anticipated by the one who remains silent. Ennis v. Warm Mineral Springs, Inc., 203 So.2d 514, 520 (2d Fla. DCA 1967).'
"This Court finds, as a matter of law and in its equitable conscience, that INDIANA was not under any obligation to notify FNC of anything and that INDIANA could not possibly have notified FNC that the subject aircraft loan was in default as of February 1, 1976, FNC has never argued that it relied in any respect upon INDIANA. Further, FNC admitted that it never searched the records of the F.A.A., to ascertain the evidence of any interests in the aircraft. FNC is by law charged with constructive notice of INDIANA's lien on the subject aircraft. See McCauseland v. Davis, 204 So.2d 334 (2d Fla. DCA 1967).
"The February default if any, and failure if any, of INDIANA to act upon it could not result in estoppel, for subsequent payments were made as late as June 8, 1976. If this Court were to hold *795 otherwise, this Court would in effect, require a bank to file an action against its borrower almost immediately when a loan is in default, by virtue of a non-payment. This would not give a bank an opportunity in which to work out its problems with its borrower, and would not be in the public interest."
The trial judge granted Indiana's motion for a summary judgment foreclosing its lien and provided that: (1) the security interest of Indiana is capable of foreclosure despite the sale, but that First National Commerce and Finance Company (the purchaser at the mechanic's lien sale) has a prior lien for the $900 paid at that sale; (2) Indiana is due the sum of $76,279.96, plus interest, and court costs; (3) unless the amount found due Indiana is paid, the aircraft shall be sold at a judicial sale; (4) from the proceeds of the sale, the clerk shall pay to First National Commerce and Finance $900; and (5) any surplus over the amounts of the two liens shall be reported to the court.
The appellant relies for reversal upon the decisions in Eastern Airlines Employees Federal Credit Union v. Lauderdale Yacht Basin, Inc., 334 So.2d 175 (Fla. 4th DCA 1976); Carolina Aircraft Corp. v. Commerce Trust Company, 289 So.2d 37 (Fla. 4th DCA 1974); and Gables Lincoln-Mercury, Inc. v. First Bank & Trust Company of Boca Raton, 219 So.2d 90 (Fla. 3d DCA 1969). These cases all hold that the mechanic's lien against an aircraft provided in Section 85.031(2), Florida Statutes (1975), is prior to a federally recorded security interest. The trial judge in this case has accorded that same priority to the purchaser at the sale. But the purchaser maintains that priority is not enough, that the mechanic's lien is superior and, therefore, that the security interest does not survive the sale. The statute provides:
* * * * * *
"The proceeds of the sale, after payment of charges for construction or repair with the costs of the sale, shall be deposited with the clerk of the circuit court for the company, if the owner is absent, where they shall remain subject to the order of the person legally entitled thereto."
* * * * * *
The Gables Lincoln-Mercury case, supra, was an action in replevin. It established the possessory right of the garageman's lien as against that of the security interest. In the Carolina Aircraft Corp. case, supra, a proceeding very similar to the instant case was examined. Although the gist of the case was a determination of priority of the liens, the action was to foreclose a mortgage on an aircraft. The appellant mechanic lienor was permitted to intervene in the foreclosure to obtain a determination of the relative priority of its possessory lien. Following this court's holding in Gables Lincoln-Mercury, supra, the appellate court held that the mechanic's lien had priority over the security interest. The court then reversed the contrary judgment and remanded the cause for a continuation of the foreclosure under that holding. Of course, the case is not determinative because, unlike the present case, no sale had taken place.
The Eastern Airlines Employees Federal Credit Union case, supra, affirmed a holding of the trial court that the mechanic's lien had priority over a prior, recorded security interest, that both liens be foreclosed and that the boat be sold to satisfy the amounts in that priority. Here again, there had been no prior sale under the statute.
The question presented thus becomes whether a sale under Section 85.031(2), Florida Statutes (1975), for a prior lien gives a purchaser title free and clear of the claim of a recorded security interest where the holder thereof does not have actual notice of the sale. We hold that the purchaser takes title but that the aircraft is still subject to the recorded security interest. We agree with the trial judge that a contrary holding would deprive due process to the holder of the recorded security interest. Cf. Straley v. Gassaway Motor Company, Inc., 359 F. Supp. 902 (S.D.W.Va. 1973). Also cf. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).
*796 We believe we are supported in our view by the holding of this court in Altec Lansing v. Friedman Sound, Inc., 204 So.2d 740 (Fla. 3d DCA 1967), where the concept of a statutorily-created priority was recognized and upheld, but without undermining the integrity of a prior, recorded security interest. We agree that the holder of such security interest must take a back seat to the mechanic's lien holder to the extent of the value of the mechanic's lien. However, the holder of the recorded security interest takes a back seat only to that extent  for a mechanic's lien holder may seek nothing greater than the value (plus any reasonable, incident costs) of his improvements, less any monies properly paid. See Bill Ader, Inc. v. Maule Industries, Inc., 230 So.2d 182 (Fla. 4th DCA 1969).
We note that the Altec Lansing case, supra, was relied upon by the appellant bank in the case of Maryland National Bank v. Porter-Way Harvester Manufacturing Company, 300 A.2d 8 (Del. 1972). In that case, the Supreme Court of Delaware held that "... the title acquired by the purchaser at the sale is free and clear of all liens theretofore existing." On the question of the continued existence of prior, recorded security interests, the Court quoted from Uniform Commercial Code Comment 2 of § 9-311 of the Uniform Commercial Code, our Section 679.9-311, Florida Statutes (1975):
"... in all security interests the debtor's interest in the collateral remains subject to claims of creditors who take appropriate action. It is left to the law of each state to determine the form of `appropriate process.'" [emphasis added]
The court then pointed out that Florida, unlike Delaware, had enacted legislation to supplement the Uniform Commercial Code. Therefore, under Delaware law, the appellant bank's lien was extinguished, with the bank receiving a priority position with regard to the proceeds. The court also expressed its view that the Florida position interfered with the general Code policy of eliminating "stumbling blocks" in commercial transactions.[1] Our only comment in this regard is that the creation here of the recorded security interest is itself a commercial transaction, and if we were to extinguish such interest, we would be setting up a "stumbling block" of the very sort the Code and the courts are committed to eliminating. As between the purchaser and the recorded security interest holder, the latter had an interest superior in time of perfection to the interest of the former, while the former, through its own affirmative actions in undertaking the purchase of the aircraft, was in a better position to discover and become acquainted with the various interests concerned. Finally, it should be noted that both the former and the latter have recourse to the courts if either or both were victims of fraud or misrepresentation by the mechanic's lienor/seller.
Due process considerations demand that the security interest holder cannot be eliminated in this instance. It is interesting to note that the rights of a security interest holder are of sufficient strength that such a party may repossess financed property in default without notice to the purchaser and yet meet the standards of due process. See McCormick v. First National Bank of Miami, 322 F. Supp. 604, 607 (S.D.Fla. 1971). There is also sufficient strength attributed to such a party for it to repossess through "self-help" without violating due process to the purchaser. See Northside Motors of Florida v. Brinkley, 282 So.2d 617 (Fla. 1973). Accordingly, if the holder of a secured interest is in a position that it may take these actions without notice, then ironically, the rights of due process to be accorded such party must be preserved by the courts. See the principles of law in McQueen v. Lambert, 348 F. Supp. 1334 (M.D.Fla. 1972).
Therefore, we hold that taking into consideration Sections 85.031(2) and 679.9-310, Florida Statutes (1975), together with the *797 demands of due process, in the present case, (1) the sale of the subject aircraft is valid and the purchaser takes title thereto, (2) statutory and due process requirements preserve the interests of the holder of the prior, recorded security interest and implicitly (3) the mechanic's lienor/seller is answerable to the parties for any fraud or misrepresentations made in connection with the sale.
Accordingly, we conclude that the judgment should be affirmed.
Affirmed.
CHARLES CARROLL, Retired Associate Judge (dissenting).
I respectfully dissent. For its charge of $900.00 for repairs to the aircraft, Cort had a lien superior in dignity to the security interest represented by the installment sales contract held by the Indiana National Bank which had financed the purchase of the plane. Section 679.9-310, Florida Statutes (1975), the Uniform Commercial Code. See: Carolina Aircraft Corp. v. Commerce Trust Company, 289 So.2d 37 (Fla. 4th DCA 1974).
By Section 85.031(2), Florida Statutes (1975), the lien holder, Cort, was entitled to sell the plane as a means of enforcing its lien, subject to the conditions therein, and upon giving notice of sale as therein required. The conditions, compliance with which was not disputed, were that the plane had been entrusted to Cort for repairs, that Cort's charge therefor was reasonable, that the plane remained in Cort's possession for three months after the charge for repairs was due and continued in Cort's possession until July 30, 1976 on which date the public auction sale was made.
The cited section of the statute specified that notice of sale should be given "by notices posted for 10 days in 3 public places in the county, one of which shall be at the courthouse, and another in some conspicuous part of his shop or place of business". That notice of the sale was duly given as required by law was not disputed.
The trial court held, and, in affirming, this court agreed that the statute by providing for sale on such prescribed constructive notice, having the legal effect of conferring title on the purchaser free of inferior liens, is unconstitutional as being a taking of the property of the holder of an inferior security interest or lien without due process of law. However, this court holds the sale would be effective to cut off the inferior security interest provided "actual notice" of the sale is given to the holder thereof. In my view the holding that the sale statute is unconstitutional as drawn, and that it is constitutional provided actual notice of sale is given, amounts to an amendment of the statute by judicial fiat.
Because of the doctrine of separation of powers, if an amendment to the statute for sale for enforcement of a repairman's lien is necessary to make a sale thereunder free and clear of the interest of the property owner and of holders of inferior security interests, the legislature is the body to do that.
The judicial legislation supplying the proviso requiring actual notice of sale is both too little and too much. It is too little because the type and manner of actual notice is not set out. Can it be given by telephone, or by letter? If by letter, must it be by registered or certified mail requiring a signed receipt by the addressee? And how is proof of actual notice to be made, and preserved? It is too much because "actual notice" in some instances could not be made. Substituted service is used in foreclosures and in suits involving property interests, as to defendants who are nonresidents or whose whereabouts were unknown and as to those who avoid service, and although such substituted service is designed to result in conveying notice, the fact that actual notice does not result therefrom does not vitiate the substituted service.
Therefore, in the instance of a sale by a repairman lien holder actual notice could be impracticable, such as when the whereabouts of the owner or of the holder of a security interest are unknown. Moreover, *798 although the security interest holder in this case was holding an inferior lien which was of record in Oklahoma, not all security interests which could be outstanding and inferior to the repairman's lien are recorded. The repairman-lienor would have no way of knowing whether any such security interests were outstanding or the name and whereabouts of the holders, yet under the majority holding in this case, although the law provides otherwise, the sale without actual notice to such (unknown) holders of inferior security interest would not be free and clear thereof but would be subject thereto. As a practical result no effective sale could be expected to be made as a purchaser would never know whether or not there were such outstanding security interests and the amounts thereof.
The problem here was that the sale of the aircraft, which according to its cost and the amount thereof remaining unpaid, makes it appear the value of the plane was substantially in excess of $50,000.00, but the sale was only for $900.00, the amount of the repairman's charge against it. While inadequacy of sale price generally is not ground to set aside a forced sale, in an extreme instance such as this, when the sale was for an amount so inadequate as to shock the conscience of the court and obviously to indicate that the sale was not one for value as intended by law, the security interest holder could have had the sale set aside. Instead it filed suit to foreclose its inferior lien, treating the purchaser not as a purchaser of the property but as being only an assignee of the repairman's lien, which it then paid off.
My dissent is not because of the result, but from the ruling that the statutory provision for sale by a repairman lien holder on the notice of sale as prescribed is unconstitutional, and for the court's adding a proviso or requirement for actual notice in order for the statute to be effective against the owner and those claiming under him.
The statute requires that prior to sale the repairman must have retained possession for three months after his charges became due. Possession by the repairman of the property of another person is notice to others of the rights of the possessor. Here the owner notified the security interest holder that it was defaulting on the security interest obligation, and was abandoning the property, and directed the security interest holder to get the plane, giving the place where it was located. The sale was not held until seventeen days later. In the interval the security interest holder was thus placed on inquiry, which if pursued would have afforded it protection.
The security interest holder did not seek to obtain the plane until approximately a week after the sale.
I would hold the statute is constitutional, and that a sale thereunder for value would pass free and clear title to the purchaser which is what the law provided for, but that in this case the sale was so grossly improvident in amount as to render it subject to being set aside.
NOTES
[1] See also First National Bank of Glendale v. Sheriff of Milwaukee County, 34 Wis.2d 535, 149 N.W.2d 548 (1967).