**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**MONROE SERVICE COMPANY,**
**Defendant–Appellant.**

**No. 88–3230.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 27, 1990.

Decided May 3, 1990.

Stephen B. Clark, Asst. U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Mark S. Rohr, Crowder & Scoggins, Columbia, Ill., for defendant-appellant.

Before FLAUM, EASTERBROOK and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

This dispute, between Monroe Service Company ("Monroe") and the Farmers Home Administration ("FmHA"), arose from the parties' conflicting interest in the 1985 crops grown by James and Mary Ellen Zieger and sold by the Monroe County Sheriff on November 6, 1985, for $22,742. Monroe, which had no security interest in the crops, levied on the crops pursuant to a default judgment. FmHA, which had a perfected security interest, now sues Monroe for conversion of the crops. After a bench trial, judgment was entered in favor of FmHA. We affirm.

## I.

During 1981, James P. Zeiger and Mary Ellen Zeiger obtained loans from the FmHA secured by a lien on certain crops which were grown each year on their property. FmHA perfected its security interest in the 1985 crops by filing a U.C.C. Continuation Statement on October 8, 1985. At some point thereafter, the Zeigers defaulted on these loans.

On August 27, 1984, Monroe obtained a judgment against the Zeigers for $54,732.66. Monroe attempted to satisfy this judgment by levying on all of the Zeigers' crops, including some in which FmHA had a security interest. Monroe did not have a security interest in any of the crops. Pursuant to an order by the Circuit Court, Twentieth Judicial Circuit of Illinois ("Circuit Court"), the Sheriff of Monroe County took possession of the Zeigers' crops on October 9 and 16, 1985, and sold the crops on November 6, 1985, for $22,742.54. After costs, $15,419.80 remained to be applied

to Monroe's judgment. FmHA had a security interest in $8,078.53 of the crops which continued into the proceeds of the sale.

FmHA was given informal notice of the levy when, on October 2, 1985, one of Monroe's attorneys telephoned Frank Beckley, County Supervisor of the FmHA. Beckley requested that he be sent a copy of the levy documents, advised Monroe that FmHA had a security interest in the crops and told Monroe that FmHA should be made a copayee on any checks resulting from the sale of the crops. Notice was not given to the United States Attorney.

On November 8, 1985, Monroe filed a petition asking the Circuit Court to apply the full $15,419.80 to its judgment against the Zeigers. Beckley was sent a notice of the hearing on the petition, but the United States Attorney was not served and FmHA was not made a party to the action. During the hearing, the United States Attorney entered an appearance on behalf of the United States for FmHA. He objected to the adequacy of the notice to FmHA relating to the levy, execution, petition and sale. He also argued on the merits that FmHA was entitled to be awarded the proceeds insofar as it had a first lien on the crops. The Circuit Court granted FmHA ten days within which to submit appropriate pleadings and a brief. One week later, FmHA advised the Circuit Court that it did not intend to pursue the matter further in state court. Judgment was then granted to Monroe for the entire proceeds of the sale.

Sometime in January, 1986, FmHA made a demand on Monroe for the proceeds of the sale. The demand was refused. Thereafter, FmHA filed a complaint in federal court against Monroe alleging that Monroe had converted the Zeigers' crops. The case was tried before the court, which entered judgment for the United States, finding that Monroe had converted the proceeds of the crops. The court awarded no more to FmHA than it would have received if Monroe had recognized FmHA's lien and joined FmHA in the state court action. Monroe appeals from this judgment.

## II.

Monroe made three arguments at trial. First, it argued that no conversion took

place because its possession of the proceeds was not wrongful as it was pursuant to a court order. Second, Monroe argued that the United States was estopped from claiming conversion, and third, it claimed that the United States was precluded from bringing the federal action by principles of *res judicata.*

The district court rejected Monroe's argument that the possession was not wrongful. Wrongful assumption of control, dominion, or ownership over the personalty of another is a required element of conversion in Illinois. *Farns Associates v. Sternback,* 77 Ill.App.3d 249, 252, 32 Ill. Dec. 722, 725, 395 N.E.2d 1103, 1106 (1st Dist.1979); *Mid–America Fire and Marine Insurance Co. v. Middleton,* 127 Ill. App.3d 887, 82 Ill.Dec. 555, 558, 468 N.E.2d 1335, 1338 (4th Dist.1984). The district court held that Monroe's possession was wrongful because it found that Monroe had possession of the proceeds after the Sheriff sold the crops but before the court order, and possession was wrongful during that time. In addition, the district court found that the possession was wrongful because a judgment creditor levying on property in which there is a security interest cannot defeat the rights of a secured party in the same property. Therefore, the court found that FmHA's security interest continued into the proceeds, and when the demand by the United States was refused, possession became wrongful.

On appeal, Monroe relies on *Mid–America, supra,* for the proposition that an act that would otherwise constitute a conversion is privileged when done pursuant to a court order. In *Mid–America* the plaintiff was the insurer of the defendants. The plaintiff agreed to settle a dispute over its liability for the death of the defendants' daughter subject to a provision that it would be reimbursed out of any proceeds from a wrongful death action. The wrongful death action was settled but pursuant to a court order, attorney's fees were taken out before the plaintiff (which was not a party to the wrongful death action) was given its share. The plaintiff then sued for conversion claiming that the attorney's fees were unreasonably high and that it was due a portion of those fees. The court held that the cause of action for conversion

failed because assumption of control over the proceeds of the wrongful death action was not wrongful on the grounds that "[a]n action which would otherwise constitute a conversion is privileged when done pursuant to a court order." 82 Ill.Dec. at 558, 468 N.E.2d at 1338. Monroe argues that *Mid–America* applies here because Monroe's possession of the proceeds was pursuant to a court order and, therefore, possession was not wrongful.

We disagree. "A security interest continues in collateral notwithstanding sale, exchange or other disposition ... and also continues in identifiable proceeds." 26 Ill.Rev.Stat. 9–306(2). A judgment creditor levying on property pursuant to a court order does not defeat the rights of the secured party. *See El Paso County Bank v. Charles R. Milisen & Co.,* 622 P.2d 594, 596 (Col.App.1980); *Maryland National Bank v. Porter–Way Harvester Mfg. Co.,* 300 A.2d 8, 11 (Del.1972). FmHA's security interest continued into the proceeds of the sale and thus FmHA has a present right to the proceeds. When Monroe refused a demand from FmHA to return the property, possession became wrongful.

*Mid–America* is not to the contrary. *Mid–America* would apply to the situation where no demand had been made on Monroe. There, Monroe could legitimately claim that it had authority pursuant to the court order to retain the proceeds. Once the demand was made, however, possession became wrongful because the earlier court order did not purport to defeat FmHA's security interest. In *Mid–America,* the plaintiff did not have a security interest which would continue despite a court order and therefore the court order could affect the parties' rights to the proceeds. Here, FmHA had a present right to the proceeds which was not affected by the court order. We agree with the district court that FmHA has proven its claim of conversion.

Monroe also alleged as an affirmative defense at trial that FmHA was estopped from claiming conversion because it knew that Monroe was executing against the crops yet did nothing to protect its rights in the crops. Estoppel may be as-

serted against the United States only if the government's actions are tantamount to affirmative misconduct. *Portmann v. United States*, 674 F.2d 1155, 1167 (7th Cir. 1982). The district court found no misconduct and accordingly denied the affirmative defense.

Monroe argues on appeal that this finding was clearly erroneous. In essence, Monroe argues that because the United States was informed of Monroe's intended actions and did nothing, it caused Monroe to expend time, effort and funds to levy on the crops and therefore should be estopped. Monroe's argument, however, falls short of the mark. The United States was never given proper or adequate notice of the action. Furthermore, FmHA told Monroe that it had a security interest in the crops and requested that Monroe make it a co-payee. Monroe's failure to join FmHA renders *it* guilty of affirmative misconduct, not the United States. In addition, FmHA's conduct caused Monroe no loss because the district court awarded damages in this suit as if FmHA had been named in the state suit. Monroe is in the same position after losing this suit that it would have been had it properly pursued its action in state court by naming FmHA. Moreover, failure to intervene in the state suit cannot be said to be *affirmative* misconduct. At most, FmHA did nothing with respect to the suit. We agree with the district court that the United States was not guilty of affirmative misconduct and therefore cannot be estopped.

■ Finally, Monroe contends that the United States is precluded from pursuing the suit by principles of *res judicata*. Monroe argues that because the United States appeared in court and argued the merits of the case it is bound by the result. However, "[i]t is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party ..." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 89 S.Ct. 1562, 1569, 23 L.Ed.2d 129 (1969). In fact, in the specific context of judgment creditors, it has been held that a judgment creditor levying on property cannot defeat the rights of a secured creditor. *See El Paso County Bank*, 622 P.2d at 596; *Ma-*

*ryland National Bank*, 300 A.2d at 11. Moreover, the United States was not in a position from which a nonparty may be precluded, such as in privity with a party to the litigation, or in control of a party to the litigation. *See Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

That the United States appeared in state court does not change this result. Intervention is voluntary. "Unless duly summoned to appear in a legal proceeding, a person not privy may rest assured that a judgment recovered therein will not affect his legal rights." *Chase National Bank v. City of Norwalk*, 291 U.S. 431, 54 S.Ct. 475, 479, 78 L.Ed. 894 (1934). If the United States had actually intervened, the matter would be different, but informal notice of a case along with failure to intervene does not subject a nonparty to preclusion. This case is not precluded by the earlier state court proceedings.

Accordingly, the decision of the district court is

AFFIRMED.