**In re DAKOTA INDUSTRIES, INC., Debtor.**

**Bankruptcy No. 87–40209–PKE.**

United States Bankruptcy Court, D. South Dakota, S.D.

Sept. 4, 1991.

Billie L. Crowe, Trial Atty., U.S. Dept. of Justice, Tax Div., Washington, D.C., for petitioner.

Harry A. Engberg, Rollyn H. Samp Law Offices, Sioux Falls, S.D., for respondent.

PEDER K. ECKER, Bankruptcy Judge.

## ACTION

This case adjudicates several tax disputes based on stipulated facts. The par-

ties and Court agreed that the Court's current law clerk,[1] who worked for both parties on completely unrelated matters, may ethically assist in the instant matter. The Court derives jurisdiction over this core matter, respectively, from 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(B). This memorandum decision constitutes findings of facts and conclusions of law pursuant to Bankr.R. 7052.

### FACTUAL BACKGROUND

The following facts, gleaned from the record and stipulated to by the parties, cover more than a decade of tax decadence. Only facts stipulated to or clearly enunciated in the record consist of the factual background.

1. In May, 1979, Dakota Industries, Inc. (Dakota), established a trust fund account at a bank (Bank), pursuant to 26 U.S.C. § 7512, due to previous late payment of the trust fund portion of employment taxes.

2. Dakota deposited at least $35,005.58 in Bank through the deposits of $12,836.66 on February 26, 1980, $10,949.22 on February 28, 1980, and $11,219.70 on May 14, 1980.

3. Withdrawals from the trust fund account at Bank included $23,785.22 on April 4, 1980, and $11,220.36 on May 23, 1980, totalling $35,005.58.

4. The Internal Revenue Service (IRS) never received the withdrawn trust funds.

5. Dakota's $23,785.22 check, dated March 20, 1980, to the IRS was returned for insufficient funds.

6. Bank "allegedly" removed $35,004.92 from the trust fund account to Dakota's regular bank account, also located at Bank. "Allegedly" is used rather than conclusive language because Bank is not a party to the lawsuit so it is not in a position to admit or deny allegations of misconduct.

7. Dakota filed Chapter 11 on July 22, 1980.

8. Dakota's Chapter 11 was dismissed on December 6, 1986.

9. Dakota refiled Chapter 11 on April 3, 1987.

10. The IRS filed proofs of claims totalling $546,279.36 on August 21, 1987, covering 1978 through 1986.

11. Undisputed base tax amounts are $220,000 for the 941's and $22,000 for the 940's.

12. The IRS assessed $41,721.72 against Dakota based on a Combined Annual Wage Report (CAWR) adjustment.

13. Dakota's plan was confirmed February 23, 1988.

### ISSUES

I. What is the collection statute of limitations on federal taxes and the impact of bankruptcy thereon?

II. Do IRS activities warrant limiting interest accrued or assessments made on Dakota?

III. Who bears the burden of proof in bankruptcy court litigation of a CAWR assessment made by the IRS?

IV. Must the IRS credit a taxpayer the amount of money in an expressly designated trust fund account when said money was misappropriated by a third party?

### DISCUSSION

I. The statute of limitations on federal taxes and the impact of bankruptcy thereon.

 Congress' codification of the bankruptcy code is found in title 11 of the U.S.Code, and the tax code exists in title 26 of the U.S.Code. The bankruptcy and tax codes detail technical bodies of law. "Where the statute's language is plain, the sole function of the court is to enforce it by its terms." *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). Wherever possible, distinct federal bodies of law must be read together without conflict. The

---

1. Michael Werner Lloyd, J.D., University of South Dakota, 1989; Law Clerk, United States

Court shall apply the codes' plain meanings.

■ Dakota does not allege the IRS assessments were not made timely, but, rather, that the collection period lapsed. The federal tax collection statute of limitations, in pertinent part, reads:

(a) LENGTH OF PERIOD—Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—

(1) within 10 years after the assessment of the tax, or

(2) prior to the expiration of any period for collection agreed upon in writing by the Secretary and the taxpayer before the expiration of such 10–year period (or, if there is a release of levy under section 6343 after such 10–year period, then before such release). The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon. If a timely proceeding in court for the collection of a tax is commenced, the period during which such tax may be collected by levy shall be extended and shall not expire until the liability for the tax (or a judgment against the taxpayer arising from such liability) is satisfied or becomes unenforceable.

26 U.S.C. § 6502(a) (emphasis in original).

Prior to November, 1990, 26 U.S.C. § 6502(a)'s 10–year collection period bore a six-year time frame. P.L. 101–508, § 11317(a)(1). P.L. 101–508's amendment to 26 U.S.C. § 6502(a) includes a relevant time of:

(c) EFFECTIVE DATE—The amendments made by this section shall apply to—

(1) taxes assessed after the date of the enactment of this Act, and

(2) taxes assessed on or before such date if the period specified in section 6502 of the Internal Revenue Code of 1986 (determined without regard to the amendments made by subsection (a))

for collection of such taxes has not expired as of such date.

P.L. 101–508, § 11317(c) (emphasis in original).

The Court interprets the preceding statement to mean that, if the tax would be discharged as computed by a six-year period as of the effective November, 1990, date, the tax is subject to the six-year rule; otherwise, such tax is subject to a 10–year period. Dakota's tax delinquency spans from 1978 through 1986.

■ The statute of limitations on collection and assessment of taxes may be suspended for various reasons under 26 U.S.C. § 6503, including:

The running of the period of limitations provided in section 6501 or 6502 on the making of assessments or collection shall, in a case under title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting and—

(1) for assessment, 60 days thereafter, and

(2) for collection, 6 months thereafter.

26 U.S.C. § 6503(h). Filing a bankruptcy petition incurs the automatic stay, barring civil activities against all property the debtor has an interest in unless the bankruptcy court approves such actions. 11 U.S.C. §§ 362(a), 541. IRS collection activities are subject to the automatic stay. *See Laughlin v. I.R.S.*, 912 F.2d 197 (8th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991). Filing a bankruptcy petition suspends the tax collection statute of limitations during the pendency of the case and for six months thereafter. Dakota's bankruptcy petitions suspended the tax collection statute during the pendency of the bankruptcy cases and for six months afterwards.

Dakota enjoyed Chapter 11 protection from 1980 through December, 1986, and from April, 1987, through the present. Less than six months elapsed between Dakota's first and second bankruptcies. Therefore, the collection statute suspen-

sion, valid from the time the bankruptcy petition is filed until six months after the dismissal of the case, never could have started to run again because less than six months separates the two bankruptcy petitions. Dakota's earliest tax debt, incurred for 1978, would be unenforceable in 1984 if no bankruptcy petition or other suspending event enunciated in 26 U.S.C. § 6503 occurred. However, Dakota's Chapter 11 filings suspended the tax collection statute of limitations from 1980 through present since the lapse between petitions was less than six months. In November, 1990, the time the collection statute went from six to 10 years, Dakota was in bankruptcy, so no tax debt expired under the six-year rule. P.L. 101–508, § 11317(a)(1)'s plain language on 26 U.S.C. § 6502's amendment renders all taxes which have not expired as of November, 1990, subject to the 10–year period. The Court holds that Dakota's entire tax debt is subject to the 10–year statute of limitations and that the suspension of the statutory collection period occurred from the filing date of the first petition until six months after the petitions ultimately are dismissed where less than a six-month span separated serial bankruptcy filings.

II. Interest accrual on tax debt and the IRS's diligence.

Dakota asserts the IRS's actions of encouraging the Court to dismiss Dakota's first Chapter 11 petition, an inability of the IRS to prove the CAWR adjustments as valid to Dakota's satisfaction, and IRS inactivity justify negating interest and tax assessments. The CAWR is analyzed below in issue III.

 A bankruptcy court may reduce or eliminate post-petition interest on an oversecured federal government claim in cases of affirmative misconduct. See Matter of Lapiana, 909 F.2d 221 (7th Cir.1990); U.S. v. Monroe Service Co., 901 F.2d 610, 613 (7th Cir.1990). The IRS cannot idly sit on its rights, as a bankruptcy court may make tax adjudications where the IRS may but has not yet made an assessment. In re Kilen, 129 B.R. 538 (Bankr.N.D.Ill.1991). Civil damages are awardable for unautho-

rized disclosure of tax returns or tax return data. 26 U.S.C. § 7431. Even though case law permits prodding and penalizing the IRS into action or for previous wrongdoing, the factual stipulation fails to reference any specific IRS wrongdoing. Dakota's confirmed plan required it to make periodic payments to the IRS. The IRS's April 29, 1991, Motion for Relief of the Automatic Stay alleges Dakota neglects its plan-promised payments to the IRS. Dakota, itself, on occasion, requested a continuance of matters. Furthermore, at least some of Dakota's requests for more tax data come years after the IRS determined Dakota's tax liabilities. Dakota cannot fault the IRS entirely for the case's inability to progress. Dakota failed to prove the IRS unreasonably delayed answers to its requests and maliciously sought discharge of Dakota's first Chapter 11 petition. Dakota's inability to prove IRS wrongdoing is dispositive of what penalty against the IRS is warranted because the Court finds the IRS has not acted unreasonably in its dealings with Dakota.

Dakota's 941 tax debt, a tax by which an employer must withhold income taxes from employees and tender such funds held in trust by the employer to the IRS, constitutes a priority tax under 11 U.S.C. § 507(a)(7)(C). Dakota's 940 tax liability, a tax measured by the gross income of employees, is a priority expense pursuant to 11 U.S.C. § 507(a)(7)(A). The IRS's entire tax claim falls within Section 507's priority scheme and includes pre- and post-petition taxes. Pre-petition priority expenses accrue interest up to the filing date. In re Stonecipher Distributors, Inc., 80 B.R. 949 (Bankr.W.D.Ark.1987). Post-petition administrative priority taxes normally accrue interest during the pendency of the bankruptcy. Post-petition tax claims and interest thereon are administrative expenses of the estate. 11 U.S.C. § 503(b)(1); In re Mark Anthony Const., Inc., 886 F.2d 1101 (9th Cir.1989); In re Allied Mechanical Services, Inc., 885 F.2d 837 (11th Cir. 1989); In re Hanna, 872 F.2d 829 (8th Cir.1989); In re Parmenter, 124 B.R. 565 (Bankr.D.Neb.1990). Interest unquestionably accrues on Dakota's tax debt. Dakota

need tender to the IRS the amount required by law as interpreted and contracted to in Dakota's confirmed plan.

### III. The evidentiary burden of proving a Combined Annual Wage Report (CAWR) adjustment.

A Combined Annual Wage Report (CAWR) adjustment occurs when the IRS compares employer-submitted related W–2's, 941's, and 940 for the span of a year. A W–2 is a form whereby the employer notifies each individual employee of the wages each were paid over the span of the year and tax deductions that were withheld. Employees attach the W–2 to their individual 1040 income tax returns and use the W–2 wage and withholding information to complete their individual tax return. 26 U.S.C. § 3401, *et al.* The 941 is a quarterly tax return of the Federal Insurance Contributions Act (FICA) disclosing the amount of wages paid employees and the amount of tax withheld from employee paychecks. 26 U.S.C. § 3101, *et al.* The quarterly 941's are pay-as-you-go taxes similar to personal income tax which is withheld from employee wages. A significant difference exists in that income taxes withheld from employee wages are held in trust temporarily by the employer.

An employer's willful failure to pay over funds held in trust to the IRS subjects the responsible persons to personal liability for the trust fund portion, commonly known as a 100% penalty. 26 U.S.C. § 6672. The corporate shield will not prevent a 100% assessment against responsible corporate officials. A 100% penalty is assessed and collected in the same manner as taxes. 26 U.S.C. § 6671. The 940 tax return is an employer's tax based on the wages of each individual employee. 26 U.S.C. § 3301, *et al.* The 940, Federal Unemployment Tax Act (FUTA), is a yearly return. In a CAWR, the IRS reconciles the entire year's batch of W–2's against the total on the four quarterly 941's and the yearly 940. In addition, the 940 may be verified against state unemployment returns filed by a taxpayer. The IRS notifies the taxpayer of any discrepancies, and, if unresolved, the discrepancy is assessed against the taxpay-

er. IRS assessed $41,721.72 against Dakota on a CAWR for either unreported or underpaid 941's, 940, or erred W–2's.

Dakota advocates the Court follow the case of *Portillo v. Comm. of I.R.S.*, 932 F.2d 1128 (5th Cir.1991), which involved circumstances requiring the IRS submit some credible evidence before the tax assessment would be presumed as correct. *Portillo* involved a self-employed painter who reported to the IRS that he received a certain sum of money from contractor Navarro on his personal 1040 income tax return. *Id.* at 1131. Contractor Navarro reported to the IRS that Portillo received a higher amount but Navarro could not prove Portillo received more than Portillo himself claimed on his tax return. The IRS agent sided with contractor Navarro, claiming in court that the IRS enjoyed a presumption of correctness. *Id.* The Fifth Circuit denied the presumption of correctness in *Portillo* because the deficiency assessment fell into the narrow category of being a naked assessment. *Id.* at 1131. The IRS argues *Portillo* is distinguishable on grounds it is an income tax case. More importantly, the Court distinguishes *Portillo* because it is not a tax adjudication in bankruptcy.

▪▪▪ The Eighth Circuit has not yet specifically determined how the burden of producing evidence and persuasion are allocated in a CAWR claim in bankruptcy. An Eighth Circuit opinion, *Matter of Uneco, Inc.*, 532 F.2d 1204 (8th Cir.1976), put the burden of proving taxes as erroneous on the debtor, but the case is distinguished because it was apparently decided without consideration given to the bankruptcy filing, and, even if it did, the Bankruptcy Act was in effect at the time. The following cited Eighth Circuit cases allocate the burden of proof, but none of them originated in bankruptcy. The IRS shoulders the burden of proof in a criminal matter. *U.S. v. Shields*, 751 F.2d 247 (8th Cir.1984). The IRS must present some evidence connecting the taxpayer with wage earning activity before a presumption of correctness in a wage excise tax assessment will be recognized. *DiMauro v. U.S.*, 706 F.2d 882 (8th Cir.1983). A taxpayer must state suffi-

cient specific facts to call into question a presumptively correct civil tax deficiency determination. *Long v. Comm. of I.R.S.,* 757 F.2d 957 (8th Cir.1985); *Funk v. Comm. of I.R.S.,* 687 F.2d 264 (8th Cir. 1982). In a trust fund 100% penalty assessment, the taxpayer bears the burden of production and persuasion. *Anderson v. U.S.,* 561 F.2d 162 (8th Cir.1977). The Eighth Circuit recognizes the presumption of correctness in civil tax assessments in nonbankruptcy cases, which track United States Supreme Court authority. *See Helvering v. Taylor,* 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935).

■ Justification for the presumption of correctness lies in the government's dire need to accomplish quick revenue collection and to encourage taxpayer record keeping. *Carson v. U.S.,* 560 F.2d 693, 695–96 (5th Cir.1977). Generally, courts will not look behind an assessment to evaluate the procedure and evidence used in making an assessment. *Raheja v. Comm. of I.R.S.,* 725 F.2d 64, 66 (7th Cir.1984). However, where an IRS assessment is shown "without rational foundation," or "arbitrary and erroneous," the presumption will not be recognized. *U.S. v. Janis,* 428 U.S. 433, 441–42, 96 S.Ct. 3021, 3025–26, 49 L.Ed.2d 1046 (1976); *Helvering,* 293 U.S. at 510, 55 S.Ct. at 288. Also, a narrow category negating the presumption of correctness occurs when the assessment is naked without any foundation. *Janis,* 428 U.S. at 442, 96 S.Ct. at 3026; *Portillo,* 932 F.2d at 1133. The tax presumption of correctness arose in case law and is greater than a mere rebuttable assumption.

■ The relevant Bankruptcy Code provision states: "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party ... objects." 11 U.S.C. § 502(a). A properly executed proof of claim constitutes prima facie evidence of its correctness in bankruptcy. 11 U.S.C. § 502(a); Bankr.R. 3001. The party objecting to a claim in bankruptcy bears the burden of going forward to meet, overcome, or, at minimum, equalize the valid claim assumption of 11 U.S.C. § 502(a). *In re Taylor,* 99 B.R. 371

(Bankr.S.D.Ohio 1989); 3 *Collier on Bankruptcy* ¶ 502.01[3] (15th ed. 1989). Section 502(a)'s plain language creates a mere rebuttable assumption of a claim's validity. The ultimate burden of persuasion always rests on the claimant. *Id.* Rationale given for the rule includes the desire to put the bankruptcy claimant in a position similar to that as a plaintiff in a nonbankruptcy civil matter. *In re Lewis,* 80 B.R. 39, 40 (Bankr.E.D.Pa.1987). Tax litigation, however, differs greatly from typical civil litigation because the taxpayer bears the burden of persuasion to prove the tax assessment incorrect. The Court need decide whether to apply the plain language of Section 502(a) or ignore the statute and apply case law's historic presumption of correctness in bankruptcy.

■ The Court concludes that 11 U.S.C. § 502(a)'s allocation of the burden of proof applies in tax assessments. Rationale prompting the Court to apply 11 U.S.C. § 502(a) includes the statute's plain language and the often-cited mandate that a court's sole function is to enforce a statute's plain language where possible. *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). Furthermore, a tax's presumption of correctness is derived from case law, and specific statutes control over general statutes, and both over case law. *See Green v. Bock Laundry Mach. Co.,* 490 U.S. 504, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989); *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). Courts have less freedom in interpreting statutory texts than in interpreting common law concepts. *Hale v. Marsh,* 808 F.2d 616 (7th Cir.1986). Congress easily could have codified tax's presumption of correctness in the Bankruptcy Code, yet did not. Where Congress knows how to say something and chooses not to, such silence controls for purposes of statutory interpretation. *In re Providence Television Ltd. Partnership,* 75 B.R. 139 (Bankr.N.D.Ill.1987). Applying Section 502(a) to tax assessments is not unreasonable, because it merely forces the IRS to adequately assure assessments are valid.

Neither should a landslide of litigation tying up the IRS erupt, because frivolous debtor arguments can be quickly ferreted out.

 Recent bankruptcy cases grappling with allocating the burden of proof of taxes in bankruptcy have applied Section 502(a) to accord an IRS's proof of claim prima facie evidentiary effect, and only when the objecting party produced credible evidence sufficient to establish error does the burden of persuasion shift back to the IRS. *In re Premo*, 116 B.R. 515 (Bankr. E.D.Mich.1990); *In re Gran*, 108 B.R. 668 (Bankr.E.D.Ark.1989); *Matter of Summa T Corp., Intern.*, 73 B.R. 388 (Bankr. E.D.Ark.1987). *Premo*, unlike *Portillo* but like the instant matter, dealt with employment-type taxes in a bankruptcy context and strictly applied Section 502(a). *Premo* distinguished decisions such as *Helvering* and *Uneco*, which placed the burden on the taxpayer, on the basis that the dated cases were not in a bankruptcy context or involved the Bankruptcy Act. *Id.* The Court concurs with *Premo*, adopts its reasoning as modified herein, and agrees with the result in *Gran* and *Summa T.* Section 502(a)'s burden placement applies to IRS assessments. All that remains is to apply the law to the facts.

 The IRS's proof of claim constitutes prima facie proof of the claim's validity. Dakota's argument is that its own 941's, W–2's, and 940 were properly completed and valid and an amount is owing, but not the additional assessment, so the IRS need prove the differences found by the IRS reconciliation. This meets the minimum test needed to challenge IRS proof of claim prima facie validity. Dakota rebutted the assumption of validity, and the IRS must render some credible proof of its CAWR assessment.

 The only proof for the CAWR assessment offered was a computer report detailing the CAWR and an assessment certificate. Assessment certificates are generally presumed correct, but Section 502(a) shifts the burden of ultimate proof to the claimant IRS. Also, a naked conclusion requires more to establish liability.

*Janis*, 428 U.S. at 442, 96 S.Ct. at 3026. The veracity of the computer report is unproven. The IRS's argument that its inability to locate other proof in the form of original assessment source documents is excusable due to the case's age is without merit. The paradox created where the IRS refuses to permit deductions claimed by a taxpayer in good faith due to lost underlying documentation, while arguing that its own good faith naked tax assessment should be accepted sans proof, is inconsistent and reflects a creditor unjustly demanding to have its cake and eat it, too. IRS's failure to meet its burden of persuasion of the legitimacy of its CAWR assessment renders the CAWR assessment voidable and void.

 Tax deficiency assessments based on unreported income do not require a nonbankruptcy court recognize the presumption of correctness unless the IRS presents some predicate evidence supporting its determination. *Portillo*, 932 F.2d at 1133; *Weimerskirch v. Comm. of I.R.S.*, 596 F.2d 358, 360 (9th Cir.1979); *Carson*, 560 F.2d at 696. A CAWR assessment based on underreported 941's, 940, or erred W–2 submission is similar to unreported income assessments because an amount assessed is based on an IRS reconciliation. The Court concludes that the similarities warrant a CAWR be treated like an unreported income tax assessment. IRS offered no credible predicate evidence for its CAWR assessment. Thus, even if Section 502(a) was ignored and the tax assessment treated as if adjudication was not in a bankruptcy forum, the CAWR assessment fails because IRS offered no credible proof needed to raise the presumption of correctness. The CAWR adjustment fails whether Section 502(a) is enforced or is ignored.

IV. The IRS and a trust fund account misappropriated by a third party.

The IRS denies Dakota's allegation that the IRS was informed of the misappropriation of trust funds by the Bank. Dakota offered no proof other than a check to the IRS returned for insufficient funds. Dako-

ta failed to prove the IRS knew of the Bank's alleged offset in a timely manner so as to attempt to recover the misappropriation. Also, Dakota's control over its account and its close ties with the bank of its choice encourage collusion.

Dakota alleges that the case of *Begier v. I.R.S.*, — U.S. —, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990), which held that the IRS holds legal title to trust funds held in benefit of the IRS, means that the IRS must credit a taxpayer of any trust fund account amount misappropriated by an entity other than the taxpayer. *Begier's* holding of legal title in the IRS must be viewed in light of the prime issue of the case. The case's context led the Supreme Court to conclude that funds tendered to the IRS within 90 days of filing bankruptcy, from an account specifically established as a spot to hold trust fund taxes, does not constitute a preference. *Begier* is a preference case which used basic trust principles to conclude that money tendered from the expressly designated trust fund account did not constitute a preference. *Id.* 110 S.Ct. at 2265. Funds segregated by a debtor in trust for federal taxes, in a trust-fund-dedicated bank account, are payable in their entirety to the IRS. *In re American Intern. Airways, Inc.*, 70 B.R. 102, 103 (Bankr.E.D.Pa.1987). The instant matter is distinguished from *Begier* because the trust funds were never tendered to the IRS. Dakota's interpretation that *Begier* stands for the proposition that funds misappropriated from a trust fund bank must be credited to the taxpayer strains *Begier* beyond a reasonable interpretation. The Court can find no authority for Dakota's allegation in *Begier* nor any statute or relevant case. Neither case law nor facts support Dakota's argument.

Dakota's argument that the IRS should shoulder the burden of suing the Bank for the funds because the IRS's resources exceed Dakota's resources is frivolous. The closest tangentially related law to Dakota's argument is 26 U.S.C. § 7430 which permits a court to award legal fees in limited circumstances to a prevailing party in IRS litigation. The burden of proof that Section 7430's elements are met falls on the prevailing taxpayer party. *Humphreys v. U.S.*, 723 F.Supp. 1421 (D.Kan.1989). Bankruptcy courts may award Section 7430 costs. *See Matter of Davis*, 889 F.2d 658 (5th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 2175, 109 L.Ed.2d 504 (1990); *In re Graham*, 106 B.R. 692, 694 (Bankr.D.Colo.1989). However, the issue of awarding Section 7430 costs is not before the Court as such costs have not been requested.

The issue begged by the allegation of both Dakota and the IRS is what is Bank's interest in and responsibility for the alleged transfer or offset by the Bank. A party whose absence renders complete relief unobtainable, or where there is substantial risk of multiple obligations, must be joined as an indispensable party. Fed. R.Civ.P. 19(a). Clearly, Bank has an interest in the account since its alleged wrongful action caused $35,004.92 not to be tendered to the IRS. The Court concludes the Bank is an indispensable party as determining the rights of the Bank to the account, and, therefore, no judgment as to Bank's interest or liability is adjudicated and is not required to render the present decision of whether the IRS must credit Dakota the amount allegedly misappropriated.

## CONCLUSION

The federal tax collection statute of limitations for any tax due as of November, 1990, is 10 years. The collection statute of limitations is suspended during bankruptcy and six months after the case is dismissed. Dakota's entire tax debt remains collectible. While authority exists to permit a bankruptcy court to limit interest on an IRS tax debt based on affirmative IRS misconduct, Dakota failed to prove IRS wrongdoing. 11 U.S.C. § 502(a) removes a tax's presumption of correctness in bankruptcy. The IRS need not credit Dakota for the amount allegedly misappropriated from a trust fund account by a third party. Finality dictates the decade-plus-long dispute over Dakota's taxes be settled and plan payments commence within 30 days of the entry of the order in the instant matter.

Counsel for the IRS shall submit an appropriate order.

United States Bankruptcy Court,
D. South Dakota, S.D.