**In re Charles Norval SHARPE, Jr., Debtor.**

**Bankruptcy No. 76B–00633–W–2.**

United States Bankruptcy Court, W.D. Missouri.

Sept. 28, 1993.

Gene A. DeLeve, Trustee, Kansas City, MO.

Carolyn Jones, Cent. Trial Section, Cent. Region, U.S. Dept. of Justice, Washington, DC, for U.S. Dept. of Justice.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

The Debtor, Charles Norval Sharpe, Jr., filed a voluntary petition on April 26, 1976 under the Bankruptcy Act of 1898 (the "Act")[1], and a discharge was granted on January 28, 1981. The Trustee, Gene De-Leve, filed his Final Report on September 25, 1990. The Court issued a Final Decree closing the case and discharging the Trustee on January 24, 1991. On December 30, 1991, the Trustee requested that the case be reopened to seek income tax refunds. The Court reopened the case. After receiving the income tax refunds, the trustee filed a Proposed Order of Distribution on April 13, 1993. On April 26, 1993, the Internal Revenue Service (the "IRS") filed a request for administrative expenses relating to 1978 and 1979 back taxes. The Trustee filed a Response to IRS' Request for Payment of Internal Revenue Taxes, and the IRS objected to the Trustee's proposed distribution. A hearing was scheduled and held June 14, 1993 at which time the Court heard statements of counsel, evidence from witnesses and legal arguments. Both parties filed briefs thereafter and the matter is now ripe for decision.

### FACTS

This case, filed in 1976 under the former Bankruptcy Act, involves a lengthy struggle between the bankruptcy Trustee and the IRS over tax liability. The present dispute concerns the estate's liability for post-petition taxes. The Trustee, Gene DeLeve, was originally appointed as the Receiver in April, 1976, and served until he was appointed Trustee in June, 1976. When the Trustee was appointed, the case appeared to be a no-asset case. The Trustee eventually recovered over $700,000 for the estate. The Trustee settled, paid and satisfied all pre-petition income tax claims and other priority claims. All secured claims have been paid in full, and the general unsecured creditors realized a 20% dividend from the estate.

The IRS filed a proof of claim on November 22, 1976, totaling nearly $1,000,000 after amendment, for pre-petition federal income taxes owed by the Debtor. The Trustee and the Debtor objected to the IRS claim. The Debtor filed suit in the United States Tax Court in November, 1976 to redetermine the deficiency assessments made by the IRS, but the Tax Court dismissed for lack of jurisdiction in October, 1977. *Sharpe v. Commissioner of Internal Revenue,* 69 T.C. 19, 1977 WL 3727 (1977).

Having filed objections to the pre-petition claim, the Trustee and the Debtor filed for summary judgment in the Bankruptcy Court in October, 1980. Bankruptcy Judge Pelofsky sustained the motion for summary judgment and held that the IRS claim could not be allowed because it was based upon a debt for which the statute of limitations had run. The ruling was reversed on appeal to the

---

1. The Act, as amended through 1973, 30 Stat. 544–66 (superseded by the Bankruptcy Reform Act of 1978 (the "Code"), as amended, 11 U.S.C. § 101 et seq. (1993)).

District Court, and the reversal was affirmed in the Eighth Circuit Court of Appeals. *Commissioner of Internal Revenue v. De-Leve,* 748 F.2d 465 (8th Cir.1984).

Further proceedings before Judge Pelofsky resulted in a settlement under which the estate paid $316,970 and the Debtor personally paid $180,296 satisfying the IRS claim in full. The total $497,266 was approximately 50% of the originally filed claim. The Court issued the settlement order on April 5, 1988, and the satisfaction was filed April 20, 1988.

The Debtor scheduled unsecured claims without priority in the aggregate amount of $10,842,787. Various claims were disallowed, withdrawn, reduced, or satisfied through settlement leaving only $558,670.75 in allowed claims eligible for distribution. Ultimately, the estate paid a total of $112,325.09 to the unsecured creditors, a 20% dividend.

During the administration of the estate, the Trustee filed U.S. income tax returns for the years 1976 through 1990. The IRS transcripts[2] indicate the returns for 1978 and 1979 were timely filed on October 26, 1979 and April 15, 1980 respectively. An assessment was made on both returns on May 3, 1982, and a Notice of Assessment sent that same day. There is no notation in the records that a Notice of Deficiency was ever sent.[3]

The IRS filed an administrative expense claim in the amount of $5,511.41 ($2,552.48 tax, $2,040.04 interest and $918.89 penalty) for the tax year 1978, and $10,359.66 ($6,065.14 tax, $3,624.18 interest and $670.34 penalty) for the tax year 1979 for a total claim of $15,871.07. The claim was filed March 12, 1984. The Trustee asserted that he did not receive a copy of this claim. The Clerk of the Bankruptcy Court wrote a letter to the IRS suggesting the IRS contact the Trustee directly regarding payment of the administrative expense claim, or file an appropriate motion with the court. The IRS took no action on the claim until 1993.

The Trustee had numerous contacts with the IRS between 1983 and 1987. During this period, various claims and objections were filed with regards to the Trustee's fiduciary income tax returns for the years 1983–1985. The claims were ultimately resolved. At no time during the resolution of these disputes did the IRS raise the issue of the 1978 and 1979 taxes.

In July of 1988, the Trustee requested a prompt assessment of any additional taxes for the years 1976 through 1987 in accordance with Revenue Procedures 76–23 and 81–17. The IRS did not notify the trustee within 60 days of his request that any of the returns had been selected for examination.

Believing the estate to be cleared, the Trustee filed his Final Report which the Court approved on October 30, 1990. The report made no mention of the 1984 administrative expense claim. While the IRS asserted that it never received a copy of the Final Report, the Court sent the IRS a notice on September 27, 1990 to Show Cause in Writing Within 25 Days of This Order Why Trustee's Final Account Should Not Be Approved and Why Trustee's Proposed Order of Distribution Should Not Be Entered by the Court. No one objected to the Final Report. The Court closed the case and discharged the Trustee on January 24, 1991.

On December 30, 1991, the Trustee applied to the Court to reopen the case. The Trustee urged reappointment and requested permission to seek income tax refunds from the IRS and the Missouri Department of Reve-

---

**2.** The IRS tax records submitted at trial are computer generated transcripts. Carol Nielson, the IRS Appeals Division Supervisor for Tax Examining Systems, testified that the underlying tax records were destroyed.

**3.** Carol Nielson testified that she was unable to locate a code on the transcripts to indicate that Notices of Deficiency had been sent, but there may be a code she was unfamiliar with or the computer code might not have existed at the time of the assessments. The IRS has attempted through its brief to introduce evidence that the computer code indicating that a Notice of Deficiency had been mailed did not come into existence until 1986. It would be inappropriate for the Court to admit as evidence assertions first introduced through the brief. Even assuming the testimony to be true, the mere absence of a procedure to record the mailing does not lead one to conclude that the mailing occurred and was not recorded. Nor is such evidence crucial to the outcome of this case. See below, Section C.(1) Notice of Deficiency.

nue. The Court granted these requests and reopened the case.

The Trustee, in fact, recovered $17,459.40 for the estate. He submitted a supplemental report with a proposed distribution order in April, 1993. The IRS responded by filing another administrative expense claim for the 1978 and 1979 taxes. The 1978 claim now showed a tax due of $4,054.27 with $9,216.55 accrued interest and $638.12 in penalty for a total of $13,908.94. The 1979 claim showed $7,721.62 tax, $18,254.73 interest and $1,516.28 penalty for a total of $27,492.63. Together the claims total $41,401.57.

The Trustee filed a response denying any liability for the 1978 and 1979 taxes, alleging that such claims were barred by the statute of limitations, claiming the estate received a tax clearance for the applicable time periods, and arguing laches and estoppel. The IRS filed a formal objection to the proposed distribution. A hearing ensued.

### DISCUSSION

 The Court has jurisdiction to hear and determine "any question arising as to the amount or legality of any unpaid tax" claim so long as the claim has not been adjudicated previously by any judicial or administrative tribunal. The Act, § 2(a)(2A).[4] The Court does not have the jurisdiction to grant discharges from prospective tax liabilities. *In re Statmaster Corp.*, 465 F.2d 978, 980 (5th Cir.1972).[5] The current controversy involves post-petition tax claims against the estate, not the Debtor. The Debtor is not a party to this dispute and is not liable for any of the taxes in question. Many of the issues raised by the parties revolve around the nature and effect of the 1984 administrative expense filing, and the discussion shall begin there.

#### A. The 1984 Administrative Expense Filing

 The IRS has claimed administrative expense priority under the Bankruptcy Act.

Section 64 governs priority and provides in relevant part:

Debts Which Have Priority. a. The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition.... (4) taxes which became legally due and owing by the bankrupt to the United States or to any State or any subdivision thereof which are not released by a discharge in bankruptcy; *Provided, however,* That no priority over general unsecured claims shall pertain to taxes not included in the foregoing priority; *And provided further,* That no order shall be made for the payment of a tax assessed against the interest of the bankrupt estate therein as determined by the court....

Taxes arising pre-petition receive fourth priority under the Act. Taxes arising post-petition, however, are expenses necessary for the preservation of the estate and are accorded first priority as administrative expenses. *McColgan v. Maier Brewing Co.*, 134 F.2d 385 (9th Cir.1943). *See* 3A James Moore and Lawrence P. King, eds., Collier on Bankruptcy ¶ 64.102[1] (14th ed. 1978).[6] *See also* The Code, 11 U.S.C. § 503(b); H.R.Rep. 595, 95th Cong., 1st Sess. 355 (1977); 1978 U.S.Code Cong. & Admin.News pp. 6310, 6311.

 The administrative expense claim filed by the IRS is a "claim" within the meaning of the Act for which a Proof of Claim must be filed. The term "claim" is defined in §§ 106 and 307(2). In § 106, "claim" includes:

all claims *of whatever character* against a debtor or its property, except stock, whether or not such claims are provable under section 63 of this Act and whether

---

4. Section 2(a)(2A) has been incorporated into the Code with only stylistic changes. *See* 11 U.S.C. § 505; H.R.Rep. No. 595, 95th Cong., 1st Sess. 356, U.S.Code Cong. & Admin.News pp. 5787, 6311, 6312 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 67 (1978); U.S.Code Cong. & Admin.News pp. 5787, 5853.

5. *See* below Section C.(3) Prompt Assessment.

6. Hereinafter "Collier."

secured or unsecured, liquidated or unliquidated, fixed or contingent (emphasis added).

Section 307(2) defines "debts" and "claims" similarly as: "debts, demands or claims *of whatever character*...." On their face, the definitions of claims are not restricted to claims arising pre-petition, and are broad enough to include administrative expense claims against the estate. In addition, Bankruptcy Rule 11–33 specifically requires post-petition tax claims to be filed as a Proof of Claim. Mollier, Arthur and Lawrence P. King, Bankruptcy Rules and Official Forms, 1979.[7] Bankruptcy Rule 11–33 provides in part:

(b) Filing Proof of Claim.

. . . . .

(3) Post–Petition Tax Claims. Notwithstanding paragraph (2) of this subdivision, the court may, at any time while a case is pending, permit the filing of a proof of claim for the following:

. . . . .

(B) Claims for taxes owing to the United States, a state or any subdivision thereof, after the filing of the petition under Rule 11–6 or 11–7 and which are assessed while the case is pending.

Thus, administrative expense claims for post-petition taxes are claims to be filed as Proofs of Claim.

■■■■ The trustee has the duty to examine and object to claims, unless there would be no purpose served by the objection. Bankr.R. 306(a). When the trustee makes no objection, the claim is "deemed allowed." Bankr.R. 306(b). Therefore, the administrative expense claim filed by the IRS in 1984 is deemed allowed in the amount of $15,871.07 and is prima facie evidence of it validity. Bankr.R. 301(b).

The Trustee argues that administrative expense claims are qualitatively different from claims for pre-petition debts. The Trustee urges the Court not to "deem" the IRS claim allowed. In support of his position, the Trustee cites *In re Mansfield & Tire Rubber Co., Inc.*, 73 B.R. 735 (Bankr.N.D.Ohio 1987). While the reliance on cases decided under the Code can guide the court in its interpretation of the Act, the Trustee's reliance on *Mansfield* is misplaced. The *Mansfield* court relied on § 503 of the Code, which permits administrative expense allowance only after notice and a hearing, to conclude that pre-petition claims and administrative expense claims are different *in kind. Id.* at 738. The notice and a hearing requirement is a Code innovation; the Act contains no such requirement. *Compare* 11 U.S.C. § 503 with the Act, § 64. As discussed above, the Act specifically required administrative expense claims to be filed in the same way as all other proofs of claim. The Trustee erred in relying upon cases decided under the Code rather than the Act. The statutory schemes were different.[8]

## B. Statute of Limitations

■■■■ The longevity of this case, some 17 years, raises statute of limitations issues. This case was closed in January of 1991 pursuant to § 2(a)(8) and Rule 514. The order closing a case is a final order, and the Federal Rules of Civil Procedure govern subsequent procedures with some limited exceptions. *See* Bankr.R. 923 (incorporating F.R.C.P. Rule 59) and Bankr.R. 924 (incorporating F.R.C.P. Rule 60). The Federal Rules of Civil Procedure impose two time limits relevant here. Rule 59 imposes a 10 day time limit on requests to amend a judgment, and Rule 60 imposes a one year limit on requests for relief from judgment based on mistake, fraud, inadvertence, excusable neglect, or newly discovered evidence. The bankruptcy exceptions are: requests to reopen cases and requests for reconsideration of claims. Bankr.R.'s 923, 924 and 307. Those requests must be made within a reasonable time. 12 Collier ¶ 307.04[3].

---

7. All references to the Bankruptcy Rules are to the Rules under the Act.

8. The Court also expresses some doubt about the continued viability of the *Mansfield* decision.

The decision was amended in *In re Mansfield & Rubber Co.,* 80 B.R. 395 (Bankr.N.C.Ohio 1987) and ultimately reversed in *In re Mansfield & Rubber Co.,* 942 F.2d 1055 (6th Cir.1991).

The Trustee may not avail himself of the claim reconsideration provisions of the Act to avoid the one year limit of Rule 60(b). Bankruptcy Rule 307 governs reconsideration of claims allowed or disallowed by court order, in the absence of an order, Rule 307 has no application. 12 Collier ¶ 307.04[1]. When a claim has been deemed allowed under Rule 306, there is no order. The appropriate procedure is to object to the claim, even if distribution has taken place. *Id.* The Trustee's procedural recourse for the IRS claim is objection. The Trustee's Response to IRS' Request for Administrative Expenses serves as an objection because it contained a denial of liability and a substantive defenses. The Trustee's objection is also well beyond the 10 day period of Rule 59.

■ An additional wrinkle here is the subsequent reopening of the bankruptcy case. Requests to reopen cases are also free from the one year limit of Rule 60(b). Bankr.R. 924. This case was properly reopened at the Trustee's request within a year of its closing for a purpose other than objecting to the IRS claim. *See* Bankr.R. 515. The question then is whether the Trustee may object to an unpaid deemed allowed claim when a case is reopened within 12 months of its closing. The Court has found no case nor statutory authority which addresses this question. The Court believes that the answer is yes, the Trustee may timely object.

■ As stated previously, the trustee has a duty to object to claims when there would be a purpose served thereby. Bankr.R. 306. Rule 306 requires only that an objection be in writing and at least 30 days' notice of a hearing provided to tax claimants. The Rule imposes no time limit within which the trustee must make his objection. Collier states that:

> A cutoff date would be inappropriate, since in many cases it is not known until late in the administration of a case whether there will be any dividend. To require action as a result of a cutoff date would be wasteful in many cases. To avoid such waste, Rule 306(a) provides that the objection need not be filed if it would serve no purpose. However, this cannot be determined until the amount available for distribution and

some idea of the extent of the administrative and priority claims are known.

12 Collier ¶ 306.06[3]. Therefore, a claim may be objected to at any time. *In re Fontainebleau Hotel Corp.,* 30 B.R. 98, 99 (Bankr.S.D.Fla.1983) (applying the Act). An objection is timely at any time during the pendency of the case. After the close of the case, the one year limit of Rule 60(b) comes into play. *See* Bankr.R. 924. However, this case was reopened within that one year period tolling the statute. The objection made in this reopened case to previously unlitigated, unpaid claims is timely with respect to Rule 60(b) and in accordance with the bankruptcy scheme.

■ Moreover, the Court could have reopened this case for the express purpose of considering the IRS claim. *See* the Act, § 2(a)(8). A court may reopen a case for "cause shown." *Id.* "Cause shown" has been interpreted broadly, and no attempt was made to define the outer limits of the court's discretion in reopening a case. 1 Collier ¶ 2.49. The Court finds that examining an administrative expense claim that was not provided for in the previously closed case, was not objected to by the trustee, and was not actively pursued by the claimant is an independent cause shown to reopen this case. As such, it is appropriate to consider the merits of the claim.

■ Finally, it must be noted that the Court has a duty to examine the propriety of the IRS claim whether or not the Trustee objected. A bankruptcy referee under the Act, as contrasted with a Code judge, actively participates in the administration of the case. *See, e.g.,* the Act, § 39(a). "It is the duty of the referee to examine the proofs filed and see that they are sufficient." *In re Owl Drug Co.,* 84 F.2d 342, 326 (9th Cir. 1936). The court may inquire into the claims "whether the creditors or the trustee raise specific objections to the sufficiency of the proofs filed or not." *Id.; American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.,* 280 F.2d 119, 122 (2nd Cir.1960); *In re Bogan,* 281 F.Supp. 242, 246 (W.D.Tenn.1968). Therefore, the Court must

reach the merits of the claim with or without an objection raised by the Trustee.

## C. Validity of the IRS Claim

The Trustee has attacked the IRS' 1984 claim on four grounds: (1) the assessment was invalid because it was not preceded by a notice of deficiency; (2) the assessment was invalid because there is no proof that a valid assessment was ever made; (3) the assessment is unenforceable whether valid or not because the IRS waived any claim by giving the estate tax clearance in 1988; and (4) the IRS is barred by laches to assert this nine year old claim.

### (1) Notice of Deficiency

■ The Trustee first argues that the IRS claim is invalid because the assessment of 1978 and 1979 taxes was not preceded by a notice of deficiency as required by 26 U.S.C. § 6212(a) (1993).[9] No evidence submitted indicates a notice of deficiency was ever sent. The Trustee's arguments against the post-petition tax assessment are the same as those advanced against the pre-petition tax obligations of the Debtor previously litigated in *Commissioner of Internal Revenue v. De-Leve*, 748 F.2d 465. In the prior case, the District Court held that the Tax Code, 26 U.S.C. § 6871 dispensed with the requirement of a statutory notice of deficiency for tax claims after the commencement of bankruptcy proceedings. *Id.* at 467. The Eighth Circuit agreed. *Id.* In finding that a notice of deficiency is not required in bankruptcy cases, the Eighth Circuit stated that:

> it seems clear that the statutory-notice provision of Form 872–A was written with only non-bankruptcy cases in mind, since § 6871 exempts bankruptcy cases from the statutory-notice provision of § 6213....

*Id.* The Tax Code and the Eighth Circuit do not distinguish between pre- and post-petition taxes; rather, they indicate that any assessment in a bankruptcy proceeding is exempted from the notice provision. The principles apply equally to pre-petition taxes assessed against the Debtor and post-petition

taxes assessed against the estate. The Trustee's position is not well taken, and the failure to send a notice of deficiency is not fatal to the IRS.

### (2) Assessment Validity

The Trustee argues that there is no proof that a valid assessment was ever made, and therefore the claim fails to comply with 26 U.S.C. § 6203 which requires "[u]pon request of the taxpayer, the Secretary shall furnish the taxpayer a copy of the record of assessment." The IRS admitted that all the tax documents for the relevant years have been destroyed, but entered as evidence, instead, computer transcripts to demonstrate that valid assessments occurred. If the Trustee is correct, the IRS would be barred from now assessing the tax by the 3 year statute of limitations for assessments. 26 U.S.C. § 6501. The IRS responds by arguing that their claim was deemed allowed and constitutes prima facie evidence of the claim's amount and validity. *See* Bankr.R. 301(b).

■ It is settled that a properly filed proof of claim shifts the burden of producing evidence to the trustee and entitles the claimant a share in the distribution unless an objection is entered. *In re Friedman*, 436 F.Supp. 234, 237 (D.Md.1977) *citing Whitney v. Dresser*, 200 U.S. 532, 26 S.Ct. 316, 50 L.Ed. 584 (1906). While the burden of production shift, the burden of persuasion remains upon the claimant. *Id.* At no time does the objector assume the burden of disproving the claim. *Id.* The objector must present some evidence contradicting the claim:

> whereupon the bankruptcy judge must weigh the evidence presented by the objector against the proof of claim, which itself retains some weight as evidence, *e.g. Whitney v. Dresser,* supra, and any evidence presented by the claimant. After weighing the evidence, the judge must make a finding of fact as to the validity and amount of the claim.

*Id.*

■ Here, the Trustee has presented evidence that he filed all required tax returns

---

**9.** There has been no significant change to § 6212(a) during the entire course of this case.

*Compare* 11 U.S.C. § 6212(a) (1976).

for the disputed periods. The returns were correct to the best of his knowledge. He later submitted the returns for prompt assessment and was not notified of a deficiency at that time. The IRS has presented their prima facie claim and a computer transcript indicating an assessment was conducted. The IRS submitted no other records because all underlying tax documents were destroyed.

A recent case in the Bankruptcy Court for the Southern District of South Dakota considered similar facts. *See In re Dakota Indus., Inc.*, 131 B.R. 437 (Bankr.D.S.D.1991). In *Dakota Indus.*,[10] the court considered the evidentiary value of the IRS' computer report in a trust fund tax case. *Id.* at 444. The underlying tax documentation had been destroyed, and the IRS relied on its proof of claim and computer transcript to make its case. *Id.* at 445. The court found that the debtor/taxpayer's argument that its own records and forms were properly completed and valid was sufficient to meet the minimum response burden to challenge a prima facie proof of claim. *Id.* In weighing the evidence, the Court stated:

> The only proof for the CAWR assessment offered was a computer report detailing the CAWR and an assessment certificate … The veracity of the computer report is unproven. The IRS's argument that its inability to locate other proof in the form of original assessment source documents is excusable due to the case's age is without merit.… IRS's failure to meet its burden of persuasion of the legitimacy of its CAWR assessment renders the CAWR assessment voidable and void.

*Id.* Similarly in the present case, the IRS' inability to produce the documentation to support their assertion that a valid assessment makes it void. *See also U.S. v. Janis*, 428 U.S. 433, 442, 96 S.Ct. 3021, 3026, 49 L.Ed.2d 1046 (1976) ("naked" tax assessment is arbitrary and erroneous). Therefore, the IRS has not demonstrated that a valid assessment was conducted in 1982. The stat-

ute of limitations has run, so the claim must be disallowed. *See* 26 U.S.C. 6502.

### (3) Prompt Assessment

■ The Trustee argues that he requested a prompt assessment from the IRS of the estate's tax liability for 1978 and 1979 through Revenue Procedures 76–23 and 81–17, and should be awarded a discharge of any liability because the IRS failed to respond within 60 days. The IRS responds by arguing that, notwithstanding its failure to send a notice within 60 days of the prompt assessment request, no discharge is allowed because the estate is not a successor of the debtor. In support of its position, the IRS cites *In re Fondiller*, 125 B.R. 805 (N.D.Cal. 1991) and *In re Rode*, 119 B.R. 697 (Bankr. E.D.Mo.1990). The Court lacks jurisdiction to reach the issue of what effect the Revenue Procedures have in a case under the Act. *See In re Statmaster Corp.*, 465 F.2d 978.

Both the Trustee's and the IRS' arguments hinge on an interpretation of § 505(b) of the Code. The *Fondiller* and *Rode* cases rest on a careful interpretation of the language of § 505. *See* 125 B.R. at 807; 119 B.R. at 699. While Code § 505 has its origins in § 2(a)(2A) of the Act, § 505(b) constituted a significant change from pre–Code law. *See* 3 Collier ¶ 505.05 (15th ed. 1993). Section 505(b) was adopted largely in response to the Fifth Circuit's opinion in *In re Statmaster Corp.*, 465 F.2d 978. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977), 1978 U.S.Code Cong. & Admin.News pp. 6311, 6312.

In *In re Statmaster*, the referee permitted the trustee to file a tax return showing no tax due and then discharged the trustee from any future liability for internal revenue taxes in connection with the estate. *Id.* at 979. The District Court reversed holding the bankruptcy court lacked jurisdiction, and the Fifth Circuit affirmed the reversal. *Id.* The Fifth Circuit found that a prospective discharge of tax liability was a declaratory judg-

---

**10.** The case arose under § 502(a) of the Code which provides for prima facie weight to be given to proofs of claim entered without objection. *See* 11 U.S.C. § 502(a). This carries forth the statutory scheme of Rule 306 and 301 under the Act, and the Court finds it persuasive authority.

ment violative of 28 U.S.C. § 2201. *Id.* at 980. The Court stated:

> Has Congress evidenced an intent that the bankruptcy courts have jurisdiction to enter a binding determination on a question of federal taxation before the Internal Revenue Service has assessed a deficiency or presented a claim.... We find it has not.

*Id.* at 981. In enacting the § 505(b) of the Code and amending 28 U.S.C. § 2201(a), Congress has conferred jurisdiction on bankruptcy courts to prospectively discharge taxes authorizing the Revenue Procedures. 3 Collier ¶ 505.05 (15th ed. 1993). However, the Court has no authority under the Act to give effect to Revenue Procedures 76–23 nor 81–17. This, of course, is an "Act" case and, therefore, the broader jurisdiction of the "Code" is not present.

Although the Court lacks jurisdiction to give prospective effect to the Revenue procedures, the Court has authority to hear and determine any question arising to the amount or the legality of any unpaid tax for which the IRS filed claims. The Act, § 2(a)(2A); *see In re Statmaster Corp.*, 465 F.2d at 980–81. The IRS filed its administrative expense claim in 1984 and a supplement in 1993. This opinion's discussion of all the issues herein is based upon this jurisdiction, not jurisdiction under § 505 or any other portion of the "Code".

### (4) Laches

The Trustee's final argument is one of laches. Although the Court has already concluded that the IRS is barred from asserting the 1984 claim for the reasons stated above, the Court agrees with the Trustee and finds that laches is an independent bar to the IRS claim.

■ Section 70 of the Act gives the trustee the benefit of all defenses available to the Debtor against third parties. The defense of laches is among the defenses available to the trustee. 3A Collier ¶ 63.07[16] (14th ed. 1978). The defense of laches may bar an action when the proponent of the claim is guilty of (1) unreasonable and unexcused delay, (2) resulting in prejudice to the defendant. *Whitfield v. Anheuser–Busch, Inc.*, 820 F.2d 243, 244 (8th Cir.1987). Mere delay is not, of itself, sufficient to constitute laches; the delay must have caused disadvantage and prejudice to the defendant. *Baker v. Baker*, 951 F.2d 922, 926 (8th Cir.1991). A statute of limitations is merely one factor among many to consider when determining whether the delay is unreasonable and whether the potential for prejudice is great. *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 805 (8th Cir.1979), *cert. denied*, 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980). The Court notes that under the Act tax liability is non-dischargeable. § 17(a)(1). Normally when the IRS makes a valid assessment of tax liability, it has 6 years to collect from the Debtor. 26 U.S.C. § 6502 (1982).[11] The running of the 6 years is tolled during a bankruptcy case and for six months thereafter.[12] Thus, the IRS normally has recourse against the Debtor after the bankruptcy proceedings are concluded. Here, however, the taxes were assessed against the estate, and there is no recourse against the Debtor. The IRS must participate in the bankruptcy proceedings to collect post-petition taxes assessed against the estate.

■ Under the first prong of the laches test, the IRS delayed nine years in the prosecution of its claim and has offered no justification for its delay. The IRS originally filed its claim in 1984. The Clerk of the Court advised the IRS to contact the Trustee personally, or file a motion with the Court to collect its claim. The IRS did nothing. The IRS dealt with the Trustee frequently concerning tax liabilities throughout the case. The IRS pursued a lengthy pre-petition liability action up to the Eighth Circuit Court of Appeals, and post-petition claims arose from the Trustee's 1983–1985 income tax returns. In these dealing, the IRS never mentioned the 1978 and 1979 claims. The Trustee sought a prompt assessment of its tax liabili-

---

11. 26 U.S.C. § 6502 was amended in 1988 to extend that time to ten year for taxes assessed after November 10, 1988.

12. *Contrast* 26 U.S.C. § 6501 in which the 3 year statute of limitations for assessment is not tolled by bankruptcy.

ty in 1988 according to the IRS' revenue procedures. The IRS failed to act with regard to the 1978 and 1979 claims within those procedures. The Court sent the IRS a show cause order soliciting objections to the Trustee's Final Report. No one objected. Until the case closed in 1991, the IRS made no attempt to collect the 1978 and 1979 claims. Finally in 1993, nearly 9 years after the original claim, the IRS seeks payment. In light of the IRS' continued inaction, despite ample opportunity to present its claim, the Court concludes that the IRS delayed unreasonably without justification.

The second prong of the laches test examines the prejudice caused by the IRS delay. In 1990, after approval of his Final Report and Proposed Distribution, the Trustee paid a $112,325.09 to the general unsecured creditors, yielding a 20% dividend. The dividend came 14 years after the filing of the petition. The Trustee relied on the IRS' tax clearance procedures to close the estate. The IRS now seeks payment of an administrative expense claim in excess of $41,000. Administrative expense claims have priority over claims of general unsecured creditors. *See* the Act, § 64a. While the IRS states that it only seeks the newly acquired $17,459.40 tax refunds, it could recover the balance of its claim from the general unsecured creditors as a wrongful distribution should the Court uphold the validity of its claim. Therefore, the Court finds that there would be substantial prejudice to the estate as well as potential substantial prejudice to general unsecured creditors attributable to the IRS' delay in acting upon its claim.

The two prongs of the test for laches have been met. The Court believes that cases must come to a final resolution. There is a point at which it becomes too late to assert a right to the derogation of another's settled expectations. This case has lasted nearly seventeen years, and the unsecured creditors have received a 20% dividend. The Court does not wish to prolong the case with further litigation. The Court finds the IRS claim barred by laches.

## CONCLUSION

Based on the above discussion, the IRS' 1984 administrative expense claim, as supplemented in April, 1993, is hereby DISALLOWED. The Supplement to Final Report of Trustee Combined with Proposed Order of Distribution of Remaining Assets of the Estate is hereby APPROVED.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required by Bankruptcy Rule 752.

SO ORDERED.